The appellant was indicted and convicted of robbing John D. Lewis of eighteen dollars on March 18, 1978. Sentence was fixed at thirty years' imprisonment. Immediately before trial the appellant withdrew his plea of not guilty and filed a single plea of not guilty by reason of insanity. The changing of the plea was properly within the discretion of the trial court.Knott v. State, 202 Ala. 360, 80 So. 442 (1918).
 I
Initially the appellant contends that the verdict of the jury was against the great preponderance of the evidence which allegedly shows that he was insane at the time of the offense.
The general principles of law regarding the burden of proof and the defense of insanity were recently set forth inChristian v. State, 351 So.2d 623 (Ala. 1977), and summarized in Herbert v. State, 357 So.2d 683, 688-689 (Ala.Cr.App.), cert. denied, 357 So.2d 690 (Ala. 1978). These principles were also applied in Woods v. State, 364 So.2d 1178 (Ala.Cr.App.), cert. denied, 364 So.2d 1186 (Ala. 1978). In each of these cases the preponderance and weight of the evidence on the question of insanity were so clear and strong that the statutory presumption of sanity was overcome. With the addition of Pickett v. State, 37 Ala. App. 410, 71 So.2d 102, cert. denied, 260 Ala. 699, 71 So.2d 107 (1954), these four cases represent the only occasions where judgments of conviction have been reversed by an appellate court of Alabama because the jury verdicts were contrary to the preponderance of the evidence on the issue of insanity. Here the evidence of insanity falls far short of that presented in Christian, Woods, Herbert, andPickett.
Prosecution witness Mattie L. Fears, who had known the appellant "ever since my brother married his sister", testified that she asked the appellant to take her to the store. On the way the appellant asked her is she knew any banks they could rob and she told him to "quit talking crazy". While *Page 1077 
she was in the store the appellant robbed Mr. Lewis who was waiting to put some gasoline into his automobile. The appellant drove off and left Ms. Fears. Upon learning that the appellant had committed the Ms. Fears exclaimed, "Oh, Lord! That nut." On cross examination Ms. Fears testified that when the appellant has been drinking "he's just not himself" and that he had been drinking the day of the robbery.
The appellant's sister testified that the appellant's character began to change around the first of February, 1978. The appellant told her that the "Indians" were coming to take over Alabama; that they had a "bounty" on him; that somebody was following him, trying to kill him; that the Mafia was taking over; and that he had signed the Panama Canal Treaty. In Ms. Cheryl Clark's opinion the appellant was "unsound".
The appellant's mother noticed a "great change" in her son's reactions beginning in January of 1978. The appellant was saying "weird things kinda like, you know, got on my nerves. You know talking about Indians and Moffits and things like that . . ." She testified that she thought it was a "dream . . . or something that he was having".
Dr. Chester Wright Jenkins, a psychiatrist, testified as an expert to the mental condition of the appellant. The appellant complained of dizziness, of "just feeling really bad and of being anxious and depressed and confused". He told Dr. Jenkins that he had received several head injuries from fighting in the past.
After finding what was first thought to be evidence of brain damage Dr. Jenkins examined the appellant "pretty completely", conducting a brain wave test (EEG), brain scans and skull x-rays. Dr. Jenkins "did not find anything to prove . . . brain damage".
 "The main thing that was the matter with Mr. Meredith was that he had, really, periods of confusion. He had periods when it was very difficult for him to sort of keep track of his thoughts, to concentrate as he should, to make reasonable judgments and act upon them and so forth."
* * * * * *
 "The essence of what I saw was, as I said, the confusion, the difficulty in concentrating, the difficulty in forming accurate judgments and in making himself behave according to those judgments."
Dr. Jenkins found the appellant to be "schizophrenic". He stated that this condition is a mental illness which can be and was being treated with medication. At best Dr. Jenkins could only state that the appellant had the potential and it was entirely possible that he was unable to distinguish right from wrong on the day of the robbery.
The appellant testified in his own behalf and stated that he was famous because of the Panama Canal Treaty; that there was a contract out on him because he was famous; that if they killed him or if he killed one of them there was going to be a war; that he committed the robbery so he would go to jail and keep from killing anybody. The appellant's entire testimony contained delusional responses characteristic of those set forth above.
We have carefully read and considered all the testimony in this case and taken in the light most favorable to the appellant it falls far short of establishing the appellant's insanity at the time of the crime. The legal test for insanity as a defense to a criminal prosecution requires that
 "at the time of the commission of the crime appellant was afflicted with a diseased mind to the extent that (1) she did not know right from wrong as applied to the particular act in question, or (2) if she did have such knowledge, she, nevertheless, by reason of the duress of such mental disease had so far lost the power to select the right and to avoid doing the act in question as that her free agency was at the time destroyed, and (3) that, at the same time, the crime was so connected with such mental disease, in the relation of cause and effect, as to have been the product of it solely — which is the legal *Page 1078 
test. Parsons v. State, 81 Ala. 577, 2 So. 854; Barbour v. State, 262 Ala. 297, 78 So.2d 328." Hafley v. State, 342 So.2d 408, 410
(Ala.Cr.App. 1976), cert. denied, 342 So.2d 412
(Ala. 1977).
Unusual or weird behavior alone cannot be equated with mental insanity. Carey v. State, 361 So.2d 1176, 1179 (Ala.Cr.App. 1978). Evidence that the accused had sometimes acted a little "peculiar" or testimony that "he was not normal", "that he was not in his right mind", "looked like he was insane", or did not act "right" is not sufficient, in and of itself, to meet the test laid down by case law for establishing an insanity defense. Weeks v. State, 342 So.2d 1335 (Ala.Cr.App. 1977). Also Gibson v. State, 49 Ala. App. 18, 268 So.2d 49 (1972) (nervous, unable to sleep, anger without cause, easily influenced); Lee v. State, 43 Ala. App. 400, 191 So.2d 239
(1966) (suicide attempts). The workings of a diseased mind are so variant that no rule as to the sufficiency of the evidence to prove insanity can be laid down in all cases, but each must depend more or less upon its own particular facts. Boswell v.State, 63 Ala. 307 (1880).
The evidence of insanity in this case is far from being conclusive. The testimony of the medical expert, even when taken in a light most favorable to the appellant, only shows that the appellant may or could have been legally insane when he committed the robbery. Dr. Jenkins testified that the appellant always had the "potential" for "getting the confusion" and if the "stress" was great enough it was "entirely possible" that he was unable to distinguish right from wrong. Dr. Jenkins could only state that the appellant's "inpulsiveness, poor judgment, and so forth and so on . . . could very likely have influenced such an action".
 "I don't think that Mr. Meredith's illness, per se, would have caused him to have committed that action."
* * * * * *
 ". . . I would be hard put to say that the illness caused him to act in that particular fashion."
In conclusion, as there was only testimony that the appellantcould have been insane when he committed the robbery and no conclusive showing that the appellant's "confusion" or illness met the test of legal insanity, the issue of sanity was solely a question for the jury.
 II
The appellant contends that the remarks of the prosecutor during closing argument were so prejudicial that they constitute reversible error. From the record:
"CLOSING ARGUMENT BY MR. MYERS:
 "— Mr. Barrett says that if this defendant is found not guilty by reason of insanity, that doesn't mean he will go free. He'll probably go on down to Bryce's to be examined. Ladies and gentlemen, I'm going to tell you one thing — there's no bars in the windows at Bryce. There is no walls down there, either —
 "MR. BARRETT: Your Honor, I object to that. He doesn't know what kind of facilities they have at Bryce for restraining people like that.
 "THE COURT: Ladies and gentlemen of the jury, you will base your verdict, whatever it may be on the evidence as it came to you from the witness stand and the witness stand alone."
Argument or comment regarding the possibility of release or escape of a defendant from a mental institution if found not guilty because of insanity has been often disapproved and condemned. Christian v. State, 351 So.2d 623 (Ala. 1977), and cases cited at 351 So.2d 625. Such argument, especially where repeated, may be so grossly improper and highly prejudicial that an appropriate objection or motion invoking corrective instruction or action by the trial court is not required.Christian, 351 So.2d at 626; Allred v. State, 291 Ala. 34, 38,277 So.2d 339 (1973). However the general rule is that prejudicial statements, even though improper, are considered capable of being eradicated by the trial judge in sustaining objections thereto or by appropriate *Page 1079 
instructions to the jury or both. Allred v. State, supra; Dunnv. State, 277 Ala. 39 at 44, 166 So.2d 878 (1964); Bachelor v.State, 216 Ala. 356, 361, 113 So. 67 (1927); Anderson v. State,209 Ala. 36, 44, 95 So. 171 (1922).
From the remarks reported in this case it could be implied
that the prosecutor was going to make an improper comment on the possibility of a release or escape from a mental institution. Clearly, however, the argument never got that far nor can we state with any degree of certainty that that is where the argument was directed. Even the objection does not make the point that it was.
Nothing is presented for this court to review where defense counsel objects to an anticipated argument, which was never made, and not to an existing argument to that effect. McCord v.State, 344 So.2d 207 (Ala.Cr.App. 1977). Here the argument is fragmentary because defense counsel's objection interrupted the prosecutor's argument. The prosecutor's argument may have continued into the realm of ineradicable error or it may have maintained its present status leaving the entire comment as ambiguous as it now appears. At any rate it appears that no "sinister influence" crept into the record and we find no prejudice to the appellant. Additionally we note that the remarks under review nowhere approach the obviously prejudicial comments found in Christian and the cases cited therein. Under these circumstances the court's instructions to disregard cured any possible error or prejudice contained in the remarks.
We have searched the record and found no error prejudicial to the appellant. Therefore the judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.