Donald Robinson was indicted for and convicted of assault in the second degree, pursuant to § 13A-6-21, Code of Alabama 1975. The trial court sentenced him to four years' imprisonment.
Late on the evening of September 5, 1981, Donald Robinson, using a machete, struck George Keith with a blow that nearly severed Keith's forearm at the elbow. Keith was rushed to the hospital where, although amputation was considered, doctors were able to save his severely injured arm.
George Keith, the victim, testified that on the night of this incident he had gone to pick up his five children and their mother, Clara Baker, who had been staying at Clara's parents' home. Keith escorted the children to the car just outside the front door of the home, and went back inside to find out what was delaying Clara. When he reached the back bedroom he saw the appellant, Donald Robinson, talking with Clara. Words were exchanged and a heated argument ensued. Keith testified that the argument inside the home ended without any physical contact between the two men. Carnell Baker, Clara's sister, told the two men that they would have to go outside if they wanted to fight. She testified that Keith had a hammer in his hand at one point, but that he left it inside the house at her suggestion.
Both Keith and Clara Baker testified that during the argument inside the home, the appellant pulled a pocket knife, which he held in one hand at his side. Keith stated that he agreed to calm down after he saw appellant's knife.
The argument inside the house ended when the appellant walked outside. About five or ten minutes later Keith also walked outside. He testified that as he stepped from the front porch he realized that someone was assaulting him with a long black object which he thought was a stick. He raised his arm and deflected the blow. He tried to raise his arm again in defense, but realized that it had been nearly severed at the elbow. Instead, with his good arm, he grabbed his assailant, whom he had recognized as the appellant, around the neck and, in desperation, bit him on the face. The appellant then fled and Keith ran back inside where he was attended to before being rushed to the hospital.
The appellant admitted that he inflicted the wound that nearly cut off Keith's forearm, but he contended that he acted in self-defense. He testified that while he was in the back bedroom talking to Clara Baker, Keith approached him from behind and, without warning, struck him in the back of the head with a hammer. An argument ensued and when he, the appellant, tried to leave, Keith hit him again with the hammer and pushed him outside into the yard. At about the time he had regained his balance, Keith grabbed him again and bit off the tip of appellant's nose. He stated that someone, then, came to his rescue and handed him an object with which he immediately struck Keith. This ended the fight. The appellant dropped the object and fled in his automobile.
The appellant's wife confirmed that on the night of the incident, the appellant came home late with a wound to the back of his head and with the tip of his nose bitten off.
The appellant further testified that he had smoked some "reefers" but had only a half a beer during the four hours just prior to the confrontation with Keith. He testified that he did not own any knives and, specifically, not a machete. *Page 1330 
Carnell Baker testified that she had known the appellant for a long time. She knew that the appellant owned a machete because she had once "kept it for him."
The only issue of any significance at trial was whether or not the appellant acted in self-defense. As demonstrated above, although the appellant testified to the contrary, the evidence was more than sufficient to support the State's theory that the appellant did not act in self-defense and to support the jury's verdict that the appellant was guilty of second degree assault. The jury obviously chose to believe the State's witnesses rather than the appellant.
The appellant contends that the trial court erred in permitting the doctor who saved Keith's arm to answer questions concerning the degree of impairment to the arm. The doctor answered that amputation was considered due to the severity of the wound, and that the initial one hundred percent disability had, at the time of the trial, improved to about a fifty percent disability. The appellant insists that this evidence was irrelevant and that it "served only to prejudice and inflame the emotions of the jury." We disagree.
The appellant was charged with assault in the second degree, pursuant to § 13A-6-21 (a)(2), Code of Alabama 1975, because allegedly, "[w]ith intent to cause physical injury to another person, he cause[d] physical injury to [George Keith] by means of a deadly weapon or a dangerous instrument." The term "physical injury" is defined in § 13A-1-2, Code of Alabama 1975 as "[i]mpairment of physical condition or substantial pain."
The doctor's answers concerning the possible amputation and the degree of disability were indeed relevant and material in determining whether or not Keith's injury was a "physical injury." Such evidence was damaging to the appellant's case, but was admissible to support the offense charged in the indictment.
The appellant also claims that several remarks by the State during closing argument constituted reversible error. The prosecutor made the following comments:
 1) ". . . then let him go, but we will be back here next week trying this same kind of case."
 2) "Do you want this to happen in North Huntsville or Southeast Huntsville?"
3) "Is it going to be a rule of combat?"
All three statements were followed by objections from the appellant. The objections to the first two were immediately sustained by the trial court, and curative instructions were not requested. The objection to statement 3 was overruled.
In general, the trial court has broad discretion in controlling closing arguments. Miller v. State, 380 So.2d 1011
(Ala.Cr.App. 1980); Hurst v. State, 397 So.2d 203
(Ala.Cr.App.), cert. denied, 397 So.2d 208 (Ala. 1981). Where, as here, no abuse of discretion is found, there is no error.Donahoo v. State, 371 So.2d 68 (Ala.Cr.App.), cert. denied,371 So.2d 74 (Ala. 1979); Hurst v. State, supra. Any possible prejudice created by the prosecutor in statements 1 and 2 was eliminated when the trial court sustained appellant's objections thereto. Thompson v. State, 352 So.2d 37
(Ala.Cr.App. 1977); Vickerstaff v. State, 374 So.2d 443
(Ala.Cr.App. 1979). The propriety of statement 3 was within the discretion of the trial court and from aught that appears in the record the trial court's action of overruling the objection thereto was proper. See, Thomas v. State, 373 So.2d 1149, 1159
(Ala.Cr.App.), aff'd, 373 So.2d 1167 (Ala. 1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133
(1980); Taylor v. State, 408 So.2d 551 (Ala.Cr.App. 1981), cert. denied, 408 So.2d 555 (Ala. 1982).
We have carefully searched the record for errors injuriously affecting the substantial rights of the appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 1331