R.C. McWilliams was indicted for the attempted murder of Edmond Davis in violation of Alabama Code 1975, § 13A-4-2. A jury convicted him of the lesser included offense of first degree assault. The ten-year sentence was split conditioned upon the defendant serving one year in the penitentiary. Three issues are raised on appeal.
 I
Ostensibly, the defendant shot Davis because he thought that Davis had stolen his wallet. Defense witness Robert Carr was present during the events leading up to and resulting in the shooting. On direct examination, defense counsel asked Carr, "In your opinion, was Tuby Davis acting like he took the money?" The trial judge sustained the State's objection and Carr was not permitted to answer this question. The defendant argues that this opinion testimony should have been allowed as a statement of collective fact or a shorthand rendition of fact.
"A witness may testify to his opinion if it is a collective fact or a shorthand rendition of fact." C. Gamble, McElroy'sAlabama Evidence, § 127.01 (3) (3rd ed. 1977). The justification for allowing a witness to state his opinion as to a particular matter arises "when the nature of the subject cannot be otherwise described in language which will accurately inform the jury, when the facts cannot be ascertained and made intelligible to the court and jury or when, from the nature of the facts, no better evidence is attainable." McElroy, § 127.01 (3).
Here, we need not indulge in any elaborate discussion of whether the particular question called for a statement of fact, which the opinion rule permits, or a statement of opinion, which the rule precludes. "There is substantial agreement in this country that such a distinction is impossible to apply."McElroy, § 127.01 (4). Any possible error in refusing to allow the witness to answer the question was cured when the same witness testified that in his opinion Davis took the defendant's money and that if he did not have the money Davis would have allowed the defendant to search him. Rule 45, A.R.A.P.
 II
After Davis told Montgomery Police Corporal E.R. Crew that the defendant had shot him, Officer Crew went to the defendant's residence. The defendant's wife answered the door and Crew "asked if everything was all right." The defendant, who was standing inside the house near the front door stated that "he had shot the victim and that the reason being was because the victim had stolen fifteen hundred dollars which was in a billfold." The trial judge found this statement admissible as a spontaneous exclamation and we agree.
Spontaneous statements that are volunteered by the defendant are admissible *Page 1246 
despite a failure to comply with the Miranda safeguards.Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630,16 L.Ed.2d 694 (1966); Truex v. State, 282 Ala. 191, 192,210 So.2d 424 (1968). Although the officer's question, by his own testimony, was directed at either the defendant or his wife, there had been no attempt to place the defendant in custody or to restrain his freedom of action. Tucker v. State,362 So.2d 1316, 1318 (Ala.Cr.App. 1978); Blackburn v. State,372 So.2d 908, 911 (Ala.Cr.App. 1979). Compare Ex parte Davis,389 So.2d 952 (Ala. 1980). The Miranda safeguards are required only when a suspect is interrogated in a custodial setting. Miranda,384 U.S. at 477-78, 86 S.Ct. at 1629-30. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda,384 U.S. at 444, 86 S.Ct. at 1612; Beckwith v. United States, 425 U.S. 341,345-46, 96 S.Ct. 1612, 1615-16, 48 L.Ed.2d 1 (1976).
Furthermore, there was no interrogation of the defendant. Interrogation includes either "express questioning or its functional equivalent," that is "words or actions on the part of the police . . . [which] the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 300-01,100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). Officer Crew's question was investigatory, not accusatory, and sought no incriminating response.
Finally, after the defendant had been taken into custody and properly advised of and had waived his Miranda rights, he gave two separate statements to the police substantially identical to his first statement. These statements were properly admitted into evidence, Oregon v. Elstad, ___ U.S. ___, 105 S.Ct. 1285,84 L.Ed.2d 222 (1985), so that, even if we were to accept the defendant's contention that the admission of the first statement was error, that error was only harmless.
 III
On redirect examination, the prosecutor was not improperly allowed to rehabilitate his own witness by impeaching his prior testimony on direct examination.
On direct examination, the victim testified to the effect that he had been convicted for receiving stolen property "[r]ight at twelve years ago." On cross examination, defense counsel proved that Davis had two convictions for receiving stolen property and that the convictions were only six years old. On redirect examination, the prosecutor was allowed to ask, over objection, "is it possible that you [Davis] were mistaken when you first told me that it was about twelve years ago?"
The general rule is that a party may not impeach his own witness. Flournoy v. State, 270 Ala. 448, 452, 120 So.2d 124
(1960). This does not conflict with another rule which allows a party to refresh the recollection of his own witness on redirect examination "after the witness has given testimony on cross examination in conflict with his testimony on direct examination." C. Gamble, McElroy's Alabama Evidence, § 165.01 (7) (3rd ed. 1977). See also Cross v. State, 351 So.2d 698, 699
(Ala.Cr.App. 1977), and cases cited.
Our review convinces this Court that the defendant received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 1247