Ralph Thomas West was indicted for rape in the first degree, in violation of § 13A-6-61, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment." The trial judge set *Page 260 
sentence at life imprisonment without parole.
Dr. Phillip Dozier testified that he saw the victim at the University of South Alabama Medical Center on the night of April 29, 1983. He stated that the victim was in shock when she came to the emergency room and that she had suffered lacerations and contusions to her cheek, forearm and throat. There were blood stains on the victim's clothes. Although Dozier found no trauma to the victim's vaginal area, he noted there was motile sperm present in discharge from her vagina. This indicated that the victim would have had sexual intercourse in the previous twelve to twenty-four hours.
Randall Lamey, an officer with the Bayou La Batre Police Department, testified that he responded to a call at the victim's house on the night in question. When Lamey arrived, he was met at the door by Cindy McNeilly. The victim then walked outside and said, "He raped me and he ran through the woods." (R. 63) The victim was upset and crying.
Lamey then left and rode around the neighborhood looking for a suspect. He never found one.
Officer Gary Larson of the Bayou La Batre Police Department went to the victim's house on the night in question. When he arrived, the victim told him she had been raped. Larson recovered a belt, comb and hat from the victim's bedroom. He identified these as the same items which he delivered to the appellant some six hours earlier when he released this appellant from jail on a public intoxication charge. Larson also found a half-pint whiskey bottle at the scene.
Larson was told the appellant was the suspect. His attempts to locate the appellant were unsuccessful.
The victim testified that Cindy McNeilly had been hired to stay with her on the night of April 29, 1983 because she had recently undergone surgery. McNeilly's cousin, Janey Beritich, was also staying there that night.
Before retiring to go to bed that night around 9:00 p.m., the victim locked all the doors. At some point, she woke up and saw the appellant standing over her. He said, "I was told you needed a good fucking." (R. 79-80) The victim began screaming and the appellant told her to shut up or he would kill her. The appellant forced the victim to have sexual intercourse with him and then left. The victim said the appellant smelled of alcohol and she had not seen him previously.
Officer William Parker of the Bayou La Batre Police Department testified that he went to the jail to obtain blood samples from the appellant after he had been brought back from Alaska. While there, he and the appellant talked generally. At some point, the appellant asked why blood samples were being taken and Parker replied that the samples were for comparison purposes. The appellant then stated, "Well, there is no doubt as whether I had sex with her or not because I have had sex with her on several occasions." (R. 89-90) The appellant was immediately advised of his "Miranda rights."
Janey Beritich testified that she was staying at the victim's house on the night in question and helping Cindy McNeilly to take care of the victim following her surgery. That night, the appellant came over to the victim's house after the victim had gone to bed. The appellant and McNeilly drank some whiskey and then went into a bedroom and had sex.
Beritich became scared and asked McNeilly to make the appellant leave. Beritich and McNeilly then walked outside. They saw the victim with a broom and heard her tell the appellant to leave her alone. The two then called the police.
Jennie West, the appellant's mother, testified that the appellant often became violent when he was drinking. She stated that he would do bad things when he was drunk and then not remember doing them. She cited several instances of this behavior.
Dr. Claude Brown, a psychiatrist, examined the appellant and determined he suffered from a condition called pathological intoxication. He stated the appellant had a *Page 261 
tendency to over-ingest alcohol. Furthermore, he found the appellant had the tendency to become intoxicated after drinking small amounts of alcohol and that alcohol caused exaggerated behavioral changes in the appellant. The appellant also suffered from amnesia concerning the periods when he was drunk.
Brown stated that, during these behavioral changes caused by the appellant's alcohol ingestion, the appellant would not be able to conform his conduct to the requirements of law or appreciate the criminality of his conduct. However, he felt the appellant would have the capacity to appreciate the criminality of his conduct when he was not drinking.
Brown stated that he believed the appellant was suffering from pathological intoxication, a mental illness which was settled and fixed in the appellant.
Dr. C. Van Rosen, a psychologist, testified that, in his opinion, the appellant suffered from several mental illnesses, including possibly pathological intoxication. He stated that the appellant would have lacked the capacity to appreciate the criminality of his conduct on the night in question if he ingested alcohol and did, indeed, suffer from "pathological intoxication."
Craig Francis, Hal Collin West and Ora Lee Drayton all testified that the appellant's personality changed dramatically when he drank. They each told of an incident in which the appellant exhibited bizarre behavior while he was drinking and then could not remember these incidents.
The appellant testified that he went over to the victim's house after receiving a call from McNeilly. He brought over some whiskey and he and McNeilly drank and had sex. He stated that he does not remember anything after this point until the next afternoon.
That day, McNeilly came over to his house and told him that he had gone crazy the night before and had raped a woman. The appellant got scared and left town when McNeilly told him the police were looking for him.
The appellant testified that he had never seen the victim before and could not remember raping her. However, he admitted that the hat found in the victim's bedroom belonged to him. The appellant also stated that he continued to drink even after he heard stories of his behavior while he was drinking.
On rebuttal, Dr. Harry Albert McClaren testified for the State. McClaren stated that, in his opinion, the appellant was not suffering from "pathological intoxication." He surmised that the appellant suffered an alcoholic blackout on the night in question due to excessive consumption of alcohol. McClaren felt that the appellant knew right from wrong and could appreciate the criminality of his conduct on the night of April 29, 1983. He stated that the appellant's consumption of alcohol was voluntary and that he could have refrained from drinking that night.
Cindy McNeilly testified that she called the appellant and asked him to come to the victim's house on the night in question. The victim did not know the appellant was coming to her house. When the appellant arrived, he and McNeilly had sexual intercourse. McNeilly left the house when the appellant told her he was going into the victim's bedroom and "fuck" her. McNeilly testified that the appellant was drunk.
 I
The appellant contends his motion for new trial should have been granted based on his objections to the trial court's oral charge on the law of intoxication as it relates to the defense of insanity.
 "It is a well settled proposition of law that, upon review of the trial court's instructions to the jury, the charge must be taken as a whole and portions challenged not isolated therefrom or taken out of context, but rather considered together. Lowman v. State, Ala.Cr.App., 400 So.2d 430, cert. denied, Ala., 400 So.2d 434 (1981); Harris v. State, Ala.Cr.App., 394 So.2d 96 (1981); Stewart v. State, Ala.Cr.App., 381 So.2d 214
(1979), cert. denied, Ala., 381 So.2d 220 (1980); *Page 262 McCovery v. State, Ala.Cr.App., 365 So.2d 358
(1978)."
Jackson v. State, 412 So.2d 302, 308 (Ala.Cr.App. 1982).
Our review of the entire oral charge convinces us that the trial court fully and accurately instructed the jury on the law concerning intoxication and insanity. See R. 336-42.
The instruction substantially followed the language in §13A-3-1, Code of Alabama 1975 (on mental disease or defect) and § 13A-3-2, Code of Alabama 1975 (on intoxication) as well as included language from relevant case law. See § 12-16-13, Code of Alabama 1975.
The following was included in the court's oral charge. "Temporary insanity arising from present voluntary intoxication is no defense to a criminal charge. On the other hand, if the accused is suffering from a settled or fixed insanity even though caused by long continued alcoholic indulgence the rule is the same as in the case of insanity arising from any other cause." (R. 342) This statement effectively sets out the interplay between the law of intoxication and insanity. SeeLister v. State, 437 So.2d 622 (Ala.Cr.App. 1983).
Thus, the above-quoted statement, when taken in conjunction with the rest of the court's oral charge, allows us to conclude that there was no error in the court's instructions on intoxication and insanity. The appellant's motion for new trial was correctly denied.
 II
During closing argument, the following remark was made by the prosecutor: "If we let this man go, every defendant that comes into the court charged with rape in the City of Mobile County is going to say, 'I am a whacko.' " (R. 334) Defense counsel objected to this remark and the trial court immediately sustained his objection.
The appellant contends the above-quoted remark was improper and constituted error because:
 "[i]t is a well-settled rule of law in Alabama that closing remarks by the prosecution which 'alert a jury to the possibility that a defendant may soon be set free or escape from a state institution if he is found not guilty by reason of insanity' are to be condemned. Jetton v. State, 435 So.2d 167 (Ala.Cr.App. 1983); Whisenhant v. State, 370 So.2d 1080 (Ala.Cr.App.), cert. denied, 370 So.2d 1106 (Ala. 1979); Meredith v. State, 370 So.2d 1075 (Ala.Cr.App.), cert. denied, 370 So.2d 1079 (Ala. 1979) Christian v. State, 351 So.2d 623
(Ala. 1977); Allred v. State, 291 Ala. 34, 277 So.2d 339 (1973); Dunn v. State, 277 Ala. 39, 166 So.2d 878 (1964)."
Anderson v. State, 469 So.2d 1362 (Ala.Cr.App.), cert. denied,469 So.2d 1362 (Ala. 1985).
 "Such argument, especially where repeated, may be so grossly improper and highly prejudical that an appropriate objection or motion invoking correction instruction or action by the trial court is not required. Christian [v. State], 351 So.2d [623] at 626; Allred v. State, 291 Ala. 34, 38, 277 So.2d 339 (1973). However, the general rule is that prejudicial statements, even though improper, are considered capable of being eradicated by the trial judge in sustaining objections thereto or by appropriate instructions to the jury or both. Allred v. State, supra; Dunn v. State, 277 Ala. 39 at 44, 166 So.2d 878 (1964); Bachelor v. State, 216 Ala. 356, 361, 113 So. 67
(1927); Anderson v. State, 209 Ala. 36, 44, 95 So. 171 (1922)."
Meredith v. State, 370 So.2d 1075 (Ala.Cr.App.), cert. denied,370 So.2d 1079 (Ala. 1979).
We find that the prosecution's remark did not constitute reversible error. First of all, the remark does not rise to the level of prejudice condemned by this court and the Alabama Supreme Court in cases cited in Anderson, supra. Secondly, we conclude that any prejudicial effect created by the prosecutor's remark was cured by the prompt action of the trial judge in sustaining defense counsel's objection to this remark. Defense counsel did not request curative instructions and none were *Page 263 
required to be given ex mero motu in this instance.Robinson v. State, 439 So.2d 1328 (Ala.Cr.App.), cert. denied,439 So.2d 1328 (Ala. 1983).
Thus, no basis of error to reversal occurred here.
 III
A suppression hearing was held, before trial, concerning a statement made by the appellant to Officer William Parker of the Bayou La Batre Police Department. Parker testified that he saw the appellant in the Mobile County Jail after the appellant had been brought back from Alaska. Parker's purpose in seeing the appellant at the jail was to be present while blood samples were obtained from him.
While the nurse was taking blood from the appellant, Parker was engaged with the appellant in general conversation, i.e., the appellant's trip to Alaska. At some point, the appellant asked Parker why blood was being taken from him. Parker told the appellant that the blood would be used to compare it with samples taken from the victim on the night of the alleged rape. The appellant then said, "Well, there is no question about whether I had sex with her or not because I had sex with her on numerous occasions." (R. 37) Parker then immediately advised the appellant of his "Miranda rights."
Parker testified that he had not been questioning the appellant when the appellant made this statement. He said the appellant's statement was a "spontaneous declaration." SeeBedingfield v. State, 47 Ala. App. 677, 260 So.2d 408 (1972).
The appellant testified that he saw Parker in the nurse's office on the night in question. He stated that Parker began questioning him about the alleged rape and asking him what happened. The appellant said he told Parker that he did not know what had happened and that he did not rape the victim. However, he did admit to Parker that he had sex with the victim. The appellant declared Parker never advised him of hisMiranda rights either before or after his statements.
After hearing this evidence which was presented at the hearing, the trial court denied the appellant's motion to suppress. He now contends this was error.
The appellant contends his statement should have been suppressed because it was made before he was advised of his rights set out in Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We disagree.
The Miranda safeguards are required only when a suspect isinterrogated in a custodial setting. Miranda,384 U.S. at 477-78, 86 S.Ct. at 1629-30. McWilliams v. State,476 So.2d 1244, 1246 (Ala.Cr.App.), cert. denied, 476 So.2d 1244 (Ala. 1985). There is no doubt that the appellant was in custody when he made the statement in question. Although there is a conflict between the appellant's and Officer Parker's testimonies, we conclude that the appellant was not being interrogated when he made the statement. "Interrogation includes either 'express questioning or its functional equivalent,' that is 'words or actions on the part of the police . . . [which] the police should know are reasonably likely to elicit an incriminating response from the suspect.' " McWilliams, supra at 1246 (quoting Rhode Island v. Innis, 446 U.S. 291, 300-01,100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). For a thorough discussion on this subject, see Stahl v. State, 426 So.2d 909 (Ala.Cr.App. 1982), writ quashed, 426 So.2d 917 (Ala. 1983), cert. denied,463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1985).
Here, Officer Parker testified that he and the appellant were engaging in general conversation when the appellant asked why the blood sample was being taken. When Parker replied that it was for comparison purposes, the appellant made his statement. Parker testified that he was not questioning the appellant and had no intention of doing so when the appellant made the statement.
"Incriminating statements made in the course of casual conversation are not the products of a custodial interrogation." United States v. Satterfield, 743 F.2d 827, 849
(11th Cir. 1984). Volunteered statements *Page 264 
are not rendered inadmissible in the absence ofMiranda warnings. See McWilliams, supra at 1245-46; Stahl, supra at 914; Satterfield, supra at 849. The trial court committed no error by admitting the appellant's volunteered statement. Shewey v. State, 48 Ala. App. 730, 267 So.2d 520
(1972); Bills v. State, 49 Ala. App. 726, 275 So.2d 706 (1973); Ala. Digest, Criminal Law, Key No. 412.1(1).
 IV
Prior to trial, a hearing was held on the issue of the appellant's competency to stand trial. Dr. C. Van Rosen, a clinical psychologist who was appointed by the court to examine the appellant, testified at the hearing.
Rosen stated that, based on his evaluation of the appellant, he determined the appellant to be mentally ill due to several diagnosable mental disorders. These disorders include: a mixed personality disorder with anti-social and borderline features, alcohol abuse continuous, borderline intellectual functioning, and, possibly, alcohol idiosyncratic intoxication or pathological intoxication.
Alcohol idiosyncratic intoxication is a rare condition which exists in persons who have disproportionate behavioral reactions to the ingestion of alcohol. The cause of this disorder is unknown. However, it seems to occur where alcohol accentuates some sort of already present organic brain damage due to trauma or disease. The diagnosis of the disorder is made on the basis of anecdotal data.
A person who suffers from alcohol idiosyncratic intoxication cannot remember what happens during the period of time he is intoxicated. The person experiences behavioral changes when he drinks and he may harm himself or others during these episodes. The changes end when the person's blood alcohol level drops off.
Rosen's diagnosis that the appellant was possibly suffering from alcohol idiosyncratic intoxication was based on the appellant telling him he could not remember the substance of this offense and there was some evidence of brain damage due to injuries suffered by the appellant in several automobile accidents. However, Rosen was unable to determine whether the appellant was actually brain damaged because the tests performed on the appellant were affected by his academic deficiencies. The appellant had also exhibited other bizarre behavior in the past.
Rosen testified that, since the appellant probably did not remember the offense, he could not talk to his lawyer about it and, thus, could not aid his lawyer in his defense in this manner. Following this evidence, the trial court found the appellant to be competent to stand trial. The appellant contends this was error.
"The competence of an accused to stand trial is determined by whether at the time of the trial he has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and whether he has rational as well as factual understanding of the proceeding against him.Atwell v. State, 354 So.2d 30, 35 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 39 (Ala. 1978)." Beauregard v. State,372 So.2d 37, 43 (Ala.Cr.App.), cert. denied, 372 So.2d 44 (Ala. 1979). See also Holland v. State, 376 So.2d 796, 801
(Ala.Cr.App.), cert. denied, 376 So.2d 802 (Ala. 1979); Baileyv. State, 421 So.2d 1364 (Ala.Cr.App. 1982).
During the hearing on the appellant's motion, Dr. Rosen was asked the following question:
 "Q Any reason why he [the appellant] could not listen to and accept the advice of his attorney at that time?
 "A No, except I think the crux of the matter appeared to be that he says he doesn't remember the details of the alleged crime. Otherwise, he would be able to cooperate." (R. 22)
Later, he was asked the following question by defense counsel:
 "Q Would he be able to testify and understand in testifying, make an effort to try to frame his answers in a way after I explained to him how I want those answers framed? *Page 265 
 "A Well, I am not sure how to answer that other than to say that I think he can follow directions and cooperate with you up to the point where you start attempting to talk with him about an issue that he claims he doesn't remember. And I am saying there is a probability or a definite possibility that he doesn't remember this and, therefore, he could not talk with you about it or cooperate with you in his defense." (R. 25-26)
Further, the court asked Dr. Rosen the following question:
 "THE COURT: And during those periods when he was not suffering from exposure to the alcohol itself, would he be able to discuss his case with Mr. Vallas to the extent that his recollection allowed?
"THE WITNESS: Yes, sir." (R. 28)
"Inability to recall the events constituting the crime charged because of amnesia does not constitute mental incapacity or incompetency to stand trial. Thompson v. State,364 So.2d 683 (Ala.Cr.App.), cert. denied, 364 So.2d 687 (Ala. 1978)." Beauregard, supra, at 43. See also Davis v. State,354 So.2d 334 (Ala.Cr.App. 1978).
Thus, the fact that the appellant alleges that he cannot recall this offense does not render him incompetent to stand trial. Thompson, supra. In making his decision to deny the appellant's motion based on alleged incompetency to stand trial, the trial court was "favorably impressed with the defendant's demeanor," and found him "to be a person of considerable understanding and considerable attentiveness." (R. 48) We can find no evidence in the record which disputes these conclusions. Therefore, we hold that the trial court did not abuse its discretion in denying the appellant's motion. Bailey, supra; Holland, supra; Beauregard, supra.
 V
The appellant contends the trial judge erred by refusing to give his written requested jury charges # 15, 17, 18, and 19. "The refusal of a requested written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in other charges given at the request of the parties." Rule 14, Ala.Temp.R.Crim.P; Sec. 12-16-13, Code of Alabama 1975.
The appellant's requested charges # 15, 17, 18, and 19 dealt with insanity, intent and intoxication. The trial court's oral charge fully and substantially convered these subjects. Therefore, we find no basis of error to reversal here.
The judgment of the trial court is, therefore, due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.