276 So.2d 621

**Robert Levert JONES**

v.

**STATE.**

**I Div. 365.**

Court of Criminal Appeals of Alabama.

April 17, 1973.

John Coleman, Mobile, for appellant.

William J. Baxley, Atty. Gen., and George W. Royer, Jr., Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment in this cause charges the appellant with assault with intent to murder Floyd C. Collins. The Jury found the appellant guilty as charged, and judgment fixed punishment at seven years imprisonment in the penitentiary in the State of Alabama.

I

At trial, Mobile Police Sergeant Hubert Bell testified that he read from a "Miranda Card" (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694), advising the appellant of these constitutional rights, and then the following occurred:

"Q. Did he appear to understand those rights?

"A. Yes sir.

"Q. Were any threats or any type of coercion made on him?

"A. No sir.

"Q. Did you make him any promises?

"A. No sir.

"Q. Did he give you a statement as to his version of what happened?

"A. He gave me an oral statement. Yes sir.

"Q. Would you tell the Court what that statement was?

"MR. COLEMAN: Excuse me just a minute, Your Honor. At this point I would like to object on the grounds that no proper predicate has been laid for the admission of any statement on the part of my client.

"THE COURT: Specifically, Mr. Coleman?

"MR. COLEMAN: That's the grounds, Judge.

"THE COURT: Overruled.

"MR. COLEMAN: We except."

■ Appellant argues that reversible error was here committed in that there was not a sufficient "pre-Miranda" predicate laid prior to the admission of appellant's statement. See Potter v. State, 44 Ala. App. 376, 209 So.2d 856, and cases cited therein.

However, here the appellant took the stand and gave testimony substantially the same as that used in the statement, testified to by Sergeant Bell. The appellant testified as follows:

"Q. When was the first time you saw him that night?

"A. When he walked up and told me to stop—you know—hitting on my lady, you know. That was it.

"Q. You'll have to speak up now, so we can hear you.

"A. Oh, I'm sorry. He told me to stop hitting her or else he would shoot me.

"Q. Are you talking about Annette Braggs?

"A. Right.

"Q. Well, what exactly did he say?

"A. He told me if I hit her again, he was gonna shoot me.

"Q. And did he have a gun?

"A. Right. He had an automatic, because he pulled it back and clicked it.

"Q. All right, and what did you do then?

"A. I turned and ran away.

"Q. When you say pulled it back, you mean—?

"A. He jerked it around.

"Q. And that's when you turned around and ran?

"A. Right.

"Q. All right, when was the next time you saw him?

"A. Well, I was leaving the Sabre Club. I came back again.

"Q. You came back to the Sabre Club? Why did you come back?

"A. I came back to get Annette.

"Q. All right, was she there?

"A. No. She had gone.

"Q. All right, what did you do when you got back there?

"A. I was talking with Shelton. He's that guy that was sitting here a minute ago, and he said that Annette had went to someplace—he didn't know where exactly she had went. So I said, O.K. So I was leaving, walking down—coming out of the Sabre Club and Floyd drew up—I mean drove up, in his car, him and this other guy, and he almost hit me or something, when he drove up, so I turned around and told him to get out of the car; so he got out of the car and that's when he went for his pistol, and that's when I shot him.

"Q. All right, when he—he drove up into the parking lot of the Sabre Club. Is that right?

"A. Right.

"Q. And what did you do then?

"A. Well, I moved back out of the way, you know. This is a little parking lot between the club and a little pool room there, you know, and when he drove in the parking lot, I moved back out of the way, you know, because of the car.

"Q. Did you think at that time that he had a pistol?

"A. I knew he had a pistol. I saw it. He drew it on me."

In *Boulden v. State*, 278 Ala. 437, 179 So.2d 20, the Alabama Supreme Court stated:

"We will observe that this court, along with others, had applied the harmless error doctrine to assertions made that the introduction of evidence of confessions should not work a reversal where the defendants had taken the stand and given testimony substantially in the language of the confessions . . . ."

See also *Chandler v. State*, 283 Ala. 29, 214 So.2d 306, and cases cited therein.

II

■ Following an extensive oral charge, the appellant announced, "No exceptions," and the trial court gave seven written requested charges. The remaining three charges were either affirmative in nature, and properly refused under the conflicting testimony, or were an incorrect statement of the applicable rule of law, or were fully and substantially covered by the oral charge or other charges given at the request of appellant. Such were refused without error. Title 7, Section 273, Code of Alabama 1940.

We have carefully considered this entire record, as required by Title 15, Section 389, Code of Alabama 1940, and finding no error therein, the judgment is due to be and the same is hereby

Affirmed.

All the Judges concur.