BOWEN, Presiding Judge.
Billy Talley, the appellant, was indicted and convicted for second degree theft. He was sentenced to fifteen years’ imprisonment as an habitual offender. Two issues are raised on appeal.
I
We find no violation of Talley’s constitutional rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
On the afternoon of May 21, 1983, Auburn Police Officer Jerry Holder received a dispatch from the Opelika Police Department pertaining to an alleged theft at Howard Brothers in Opelika. The dispatch described a green “older model Oldsmobile Cutlass” with a license tag from Montgomery County, gave the tag number, stated that the car was occupied by two black males, and that they were suspects in the theft of property from Howard Brothers.
Officer Holder stopped an automobile matching this description and asked Talley, who was driving, for identification. Holder asked Talley “where he had just come from” and he said, “shopping in Opelika.” Holder testified that he then asked Talley “exactly which store in Opelika that he had been shopping at” and Talley responded “Howard Brothers”. Although Officer Holder knew that “that’s where the theft had apparently occurred”, he did not ask Talley what he had been involved in. At a hearing outside the jury’s presence, the officer testified:
“A. I didn’t ask him what he had been involved in. I told him that I didn’t even know what had happened but I just wanted to know where he left from. And whenever he specified, ‘Howard Brothers’, I told him that apparently something had happened at Howard Brothers and that they were looking for his car and two black males and that they wanted to talk to them about it. “Q. What did he say?
“A. At that time, he told me that they didn’t — ‘We didn’t do anything.’ He said, ‘A lady with a lawnmower approached us and wanted a ride and we wouldn’t give her a ride and we hadn’t done anything wrong’, and that’s whenever I said, like I said, ‘I don’t know why they want to talk to you, but they want to talk to you about something. And I don’t know what it is and would you mind going up and talking to them?’ “And he said, ‘No, we don’t mind going back.’ So I followed them back.”
Officer Holder stated that he “would have tried to stop them again if they had left.”
There was no pretrial motion to suppress. At trial, before objection was made and a voluntariness hearing held, Officer Holder testified that Talley told him he had been shopping at Howard Brothers.
“The first thing I did was ask them if I could see some identification. Like I said, I just talked to the driver. The driver gave me his driver’s license and I asked him where he had just come from and he said, ‘Shopping in Opelika.’
“And I asked him just exactly where he had come from, which store he had left and he told me that he had just left Howard Brothers. At that time, I ex *188 plained to him that the Opelika Police Department had given me a description of his car and his tag number; and I told him that I didn’t know what it was in reference to, but that they wanted to talk to him and asked him if he would mind going back to Howard Brothers and talking to those Opelika Police Officers, and he ,said he didn’t mind.
“So, at the time he just got back in his car and I followed them back to Howard Brothers.”
This testimony was admitted without objection. Only later did defense counsel “object to any statements before the proper predicate has” been laid.
At the suppression hearing, the trial judge noted that Holder’s testimony that Talley told him that he had been shopping at Howard Brothers had “already been admitted without objection.” The trial judge told defense counsel he would exclude it, “if you want me to”, but counsel replied that he did not “have any problems with that necessarily” and that he did not “have any objections to that particular statement.”
After the judge ruled admissible a portion of Talley’s statement to Officer Holder, defense counsel “changed his mind, and ... objected) to the statement of ‘Howard Brothers’, also.” The trial judge sustained this objection and asked defense counsel, “Do you want me to instruct the jury not to consider it?” After consulting with his colleague, defense counsel specifically requested the trial judge not to give the jury such instructions.
The trial judge held that Officer Holder “may testify as to what the defendant, Talley, said not pursuant to questions.”
“I think the finger of suspicion had pointed at the defendants at that point and, as such, they were entitled to the Miranda warnings before questions. But they are entitled to volunteer whatever information they want to make without Miranda warnings, and I so find.”
Before the jury, Officer Holder testified: “I told him that the Opelika Police had given us information that a ear having the description that he was driving had been involved in apparently some type theft, I didn’t know exactly what, from Howard Brothers; and then, at that time no questions were asked.
“Mr. Talley advised that he did not do anything wrong. He said that a lady with a lawnmower ‘approached me and wanted a ride and we would not give her a ride, but we did not do anything wrong.’
“And that’s what he said.”
Since the trial judge ruled inadmissible Talley’s response that he had been shopping at Howard Brothers, we need not determine whether this situation constituted general investigatory police work rather than “custodial interrogation” within the rule of Miranda requiring that a suspect be informed of his federal constitutional rights before questioning. Annot., 31 A.L. R.3d 565, § 9 (1970). See People v. Dunn, 31 Ill.App.3d 854, 334 N.E.2d 866, 871-72 (1975), cert. denied, 426 U.S. 950, 96 S.Ct. 3171, 49 L.Ed.2d 1187 (1976), where the court held, in a remarkably similar factual situation, that “[t]he questions asked were of a general investigatory nature and could not be characterized as a process of investigation which lent itself to eliciting incriminating statements.”
Officer Holder’s statement to Talley that the Opelika police wanted to question him and his companion about a theft was met with Talley’s response that they had not done anything. The question or statement did not constitute “interrogation” as defined in Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), because the officer’s words and actions were not “reasonably likely to elicit an incriminating response from the suspect.” Innis, 446 U.S. at 300-01,100 S.Ct. at 1689. See also United States v. Grady, 665 F.2d 831, 833-34 (8th Cir.1981).
We agree with the trial judge that Talley’s remark “We didn’t do anything” was a spontaneous statement volunteered by the accused and was therefore admissible despite the absence of the Miranda *189 warnings. Miranda 384 U.S. at 478, 86 S.Ct. at 1629; United States v. Harrison, 667 F.2d 1158, 1161 (4th Cir.), cert. denied, 457 U.S. 1121, 102 S.Ct. 2937, 73 L.Ed.2d 1335 (1982) (suspect’s spontaneously volunteered remark, “You got me”, made after government agent told him he was suspected of carrying narcotics held admissible). Here, Talley’s response was “so far removed from the subject of the question asked by the police [that] it is clear that the police did not intend to elicit the remark.” 2 W. Ringel, Searches & Seizures, Arrests and Confessions 27-26 (2nd ed. 1983). “Spontaneous or volunteered statements fall outside the mandate of Miranda.” Terry v. State, 397 So.2d 217, 221 (Ala.Cr.App.), cert. denied, Ex parte Terry, 397 So.2d 223 (Ala.1981); Hammons v. State, 371 So.2d 986, 988 (Ala.Cr.App.1979) (defendant’s spontaneous statement upon being advised that he was under arrest for burglary and rape, “I didn’t rape her” was admissible even though no Miranda warnings had been given).
II
We have reviewed Talley’s contention that the evidence is insufficient to support his conviction and find it to be without merit. Additionally, there was neither a motion for a judgment of acquittal, motion for a new trial, nor any motion or objection raising this issue in the trial court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.