Robert Terry Maughan was charged by indictment with the unlawful possession of marijuana contrary to the provisions of §20-2-70, Code of Alabama 1975 as amended. The jury found the appellant "guilty of possession of marijuana, not for personal use," as charged in the indictment. The trial court then set sentence at 15 years' imprisonment in the penitentiary and assessed a $10,000 fine. The appellant's motion for new trial challenging the weight and sufficiency of the State's evidence was duly overruled following a hearing.
Sheriff's Narcotics Investigator Harris Huffman testified that he flew over the residence and farm of the appellant, Robert Maughan, on the afternoon of August 21, 1983. He did this pursuant to the tip of a confidential, reliable informant. He testified that the pilot was one David Blaylock and that they were attempting to establish whether or not there was growing marijuana on the farm of the appellant.
Mr. Huffman testified that the following day he flew back over the appellant's residence in the Polk community of Dallas County, Alabama, and observed a number of plants growing in a field a short distance behind the appellant's trailer home. He stated that at times he and the pilot were no more than 20 to 30 feet above the trees and the plants growing behind the house. He testified that a short time later a helicopter belonging to the Alabama Bureau of Investigation came nearby and in radio contact they asked the helicopter to remain in the area after it, too, determined that there was growing marijuana on the premises.
Deputy Huffman returned to Craig Field and there, accompanied by Sheriff's Captain Billy Duke, state investigator Kathy Ott, and deputies Paul Duke and Gary Vancil and a U.S. Customs Agent from Mobile, entered two automobiles and drove the 8 to 10 miles to the residence of the appellant, arriving there shortly after noon on August 22, 1983. They then walked to the rear of the appellant's home and counted some 46 growing marijuana plants, 10 to 12 feet in height. They then proceeded to cut these and stack them in a field and a photograph was made of these. The officers then proceeded to enter the barn and there noticed some 9 additional stalks which had been left to dry out on a screen. There was some additional marijuana lying on an old couch in the barn.
While gathering the marijuana, the appellant entered the premises and, upon being confronted by the officers, made the statement that it was his marijuana and that he was growing it for his "personal use."
The marijuana was then stacked in a sheriff's pickup truck and taken into town. One large bag containing 4.6 pounds was then turned over to Kathy Ott who took it to the state toxicologist's office to Mr. Allen Adair for examination. The officers testified that the remaining marijuana was burned.
Mr. Adair testified at trial that, indeed, the material was 4.6 pounds of marijuana.
At trial, Deputy Sheriff Billy Duke testified that he approached the appellant as he drove into the driveway while the officers were stacking and cutting the marijuana and stated to him, "Well, I found the marijuana." *Page 1142 
The appellant simply replied yes, it was his, but it was only for "personal use". (R. 92).
All of the officers involved testified that they had observed growing marijuana in fields on from 6 to 8 to 10 different occasions prior to the seizure on this appellant's farm.
Deputy Duke estimated that a marijuana plant 7 to 9 feet tall would have a street value of $500 per plant when properly cut and marketed.
Following the presentation of the State's evidence, the appellant moved to exclude and moved to suppress the evidence as based upon an illegal search and seizure. This was overruled.
The appellant took the stand and testified at trial that he was employed at Bush Hog in Selma, Alabama in the tool and dye shop. He stated that he was a welder. He stated he had taken some college training at the George Wallace Junior College and had worked at the Alabama Industrial Development School. He was married and had one child and had no prior felonies. Appellant stated that the farm and outbuildings on the premises were, in fact, his; that he had planted the marijuana in question in April, 1983, just as he had planted other crops. He admitted that the marijuana on the premises was his but insisted that he had grown it for "my own personal use". (R. 106). The appellant also stated that the 9 plants which were in his garage drying out were also his, in addition to the 46 which were cut from behind the field at his home. The appellant also admitted on cross examination that the 4.6 pounds of marijuana which had been examined by the state toxicologist and presented as evidence in this cause was his. (R. 109). The appellant also presented the character testimony of two witnesses.
There were no exceptions to the oral charge of the trial court.
 I
The appellant insists that the search of his premises without a search warrant under the circumstances herein outlined constituted an illegal search and seizure and that, therefore, his motion to suppress and motion to exclude the evidence at trial should have been granted. He urges this court to reverse for these reasons.
There are several exceptions to the warrant requirement of the Fourth Amendment to the United States Constitution and they have been outlined in the opinion of the Supreme Court of Alabama known as Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973).
To the six exceptions to warrant requirement stated in Daniels
there also exist two additional exceptions known as "inventory search exception" recognized in South Dakota v. Opperman,428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) and more recently, the "open fields exception" recognized in Oliver v.United States, 466 U.S. 170, 184, 104 S.Ct. 1735, 80 L.Ed.2d 214
(1984); United States v. Marbury, 732 F.2d 390 (5th Cir. 1984); see also, United States v. Berrong, 712 F.2d 1370 (11th Cir. 1983). In discussing the open fields exception to the requirement of a warrant for search of the premises in Oliver v. UnitedStates, supra, the Supreme Court specifically noted:
 "In contrast, open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office or commercial structure would not be. It is not generally true that fences or no trespassing signs effectively bar the public from viewing open fields in rural areas. And both petitioner Oliver and respondent Thornton concede that the public and police lawfully may survey lands from the air. For these reasons, the asserted expectation of privacy in open fields is not *Page 1143 
an expectation that `society recognizes as reasonable.'" (Footnotes omitted).
In the case at bar the testimony of the arresting officers indicated that the area in which the 47 plants were growing was somewhere between 30 to 40 yards from the rear of the house trailer to the left rear of the home. This clearly was an open field which falls within the exception herein noted in Oliver v.United States, supra.
As hereinabove noted in the quote from Oliver v. United States, supra, aerial surveillance has been expressly approved, the United States Supreme Court citing in Oliver, United States v.Allen, 675 F.2d 1373 (9th Cir. 1980), cert. denied, 454 U.S. 833,102 S.Ct. 133, 70 L.Ed.2d 112 (1981). This court has also recognized the right of the state to aerial surveillance in its search for contraband drugs. See Thompson v. State,454 So.2d 1053 (Ala.Crim.App. 1984).
We are clear to the conclusion that the State of Alabama properly presented a prima facie case in this cause.
The appellant's motion to suppress and motion to exclude as well as his motion for new trial, each challenging the evidence in this cause and its seizure, were properly overruled and denied by the trial court. Luster v. State, 433 So.2d 481 (Ala.Crim.App. 1983); Holley v. State, 447 So.2d 829 (Ala.Crim.App. 1983);Thompson v. State, 454 So.2d 1053 (Ala.Crim.App. 1984) and Moorev. State, 457 So.2d 981 (Ala.Crim.App. 1984) and authorities therein cited.
 II
The appellant also asserts that his statement made upon his arrival at his residence to the officers to the effect that the marijuana in question was his, but for his personal use, should not have been admitted because there was no proper Miranda
predicate laid.
The State of Alabama correctly points out that, first of all, the officer, Deputy Duke, simply stated to the appellant that he had found the marijuana and there was no attempt to interrogate at this point and the appellant's answer was a spontaneous exclamation, not the product of any custodial interrogation whatever. See Terry v. State, 397 So.2d 217 (Ala.Crim.App. 1981), cert. denied, 397 So.2d 223 (Ala. 1981) and Talley v. State,455 So.2d 186 (Ala.Crim.App. 1984).
Moreover, where, as here, the appellant takes the stand and testifies to essentially the same facts as were given in his alleged "confession", there is no basis for error since the appellant in his testimony at trial testified to substantially the same statement as allegedly made by him to the officers at the scene on the date in question. Jones v. State, 50 Ala. App. 36, 276 So.2d 621 (1973) and authorities therein cited.
We have carefully examined this record and find same to be free of error. The judgment appealed from is therefore due to be and the same is, hereby, affirmed.
AFFIRMED.
All the Judges concur.