The appellant, Jamie Michelle Sheffield, was convicted of unlawful possession of marijuana for other than personal use and possession of prohibited liquors in a dry county, violations of § 13A-12-213(a)(1) and § 28-4-20, Code of Alabama 1975, respectively. The appellant was sentenced to five years' probation on the marijuana conviction and was ordered to pay a $150 fine as a result of the prohibited liquors conviction.
The state's evidence tended to show that on the early evening of March 9, 1991, Deputy Sheriff Wilburn Gray of the Franklin County Sheriff's Department observed the appellant's automobile weaving across County Road 84 near Frankfort in Franklin County. Deputy Gray stopped the appellant and observed seven unopened and one opened seven-ounce bottles of beer in plain view on the passenger-side floorboard. Gray then arrested the appellant for possession of prohibited liquors.
The appellant told Deputy Gray that she did not want her purse to be taken to the police department or to be searched, that she did not want her car to be towed, and that she wanted to lock her purse in the car. In response, Deputy Gray locked the appellant's purse in the trunk of her car and placed her in the back of his patrol car. He then radioed a wrecker service to tow the appellant's car. Gray also called Deputy Sheriff Mark Swindle and requested that he bring a drug-sniffing dog to the scene and that he assist him in searching the car before it was towed.
After the appellant repeatedly voiced concerns about her purse, Gray asked her why she was so worried. The appellant responded that she had "some marijuana for personal use" stored in the purse and that, if he wanted, she would hand it over to him. (R. 138.) At that point, Deputy Swindle arrived, and Gray told him what the appellant had said regarding the marijuana. The officers allowed the appellant to open the trunk and to retrieve her purse. She then pulled out a small metal tin, handed it to Swindle, and said, "There it is." (R. 120.)
When the appellant suddenly turned and hurriedly shoved her hand into the purse, Deputy Swindle grabbed the purse and told her that they needed to see it. Inside the purse, Swindle found a large white plastic Harco Drugs bag which held four plastic sandwich bags containing marijuana, a box of "Glad" brand plastic sandwich bags, a black pouch containing a small set of scales, and cigarette rolling papers. After discovering these items in the purse, Deputy Swindle read the appellant her rights pursuant to Miranda v. Arizona.[1] A search of the appellant's car at the scene revealed 26 12-ounce cans of beer and a partially full bottle of vodka in a cooler located in the back seat.
On August 7, 1991, the appellant filed a pretrial motion to suppress all of the evidence seized at the time of her arrest. A suppression hearing was held on August 21. On August 26, the appellant moved to suppress all statements that she made at the scene of the arrest. The circuit court denied both of these motions on the first day of the trial and granted the appellant continuing objections as to these matters. The appellant also renewed both suppression *Page 185 
motions after the state rested. Her motions, however, were once again denied.
The appellant presents two issues on appeal.
 I
Initially, the appellant argues the circuit court erred in denying her motion to suppress her statements, contending that the statements were the result of a custodial interrogation that occurred before she was advised of her Miranda rights.
It is undisputed that the appellant was in custody when she told Deputy Gray that there was marijuana in her purse. However, the protections of Miranda "are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." Rhode Islandv. Innis, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689,64 L.Ed.2d 297 (1980); Edwards v. State, 515 So.2d 86, 90
(Ala.Cr.App. 1987). "Incriminating statements made in the course of casual conversation are not the products of a custodial interrogation." West v. State, 511 So.2d 258, 263
(Ala.Cr.App. 1987) (quoting United States v. Satterfield,743 F.2d 827, 849 (11th Cir. 1984), cert. denied, 471 U.S. 1117,105 S.Ct. 2362, 86 L.Ed.2d 262 (1985)). "A practice that police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to interrogation." Innis,446 U.S. at 301, 100 S.Ct. at 1690 (footnote omitted). See also, Stahl v. State, 426 So.2d 909 (Ala.Cr.App. 1982), writ quashed, 426 So.2d 917 (Ala. 1983), cert. denied, 463 U.S. 1210,103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983).
In Talley v. State, 455 So.2d 186 (Ala.Cr.App. 1984), an officer, in response to a report that a theft had occurred at a Howard Brothers discount store and that two black men in a green "older model Oldsmobile Cutlass" automobile were involved, pulled over a car of similar description occupied by two male blacks. Without advising the occupants of theirMiranda rights, the officer asked them for identification and asked where they were coming from. After finding out that they had just left Howard Brothers, the officer told them that apparently something had happened at Howard Brothers and that two men matching their descriptions and driving the same type of car they were driving were wanted for questioning. The appellant responded, "We didn't do anything." In Talley, we held that the officer's statement "did not constitute 'interrogation' as defined in Rhode Island v. Innis . . . because the officer's words and actions were not 'reasonably likely to elicit an incriminating response from the subject.' " 455 So.2d at 188 (citation omitted).
Our present fact situation does not rise to the level ofTalley. In that case, the officer all but accused the appellant of involvement in the crime in question. In contrast, here, Deputy Gray, after being subjected to the appellant's continuous expressions of concern about the security of her purse, which was safely locked in the trunk of her car, merely asked why she was so worried about it. His question was nothing more than a response to her concerns and was not asked in hopes of eliciting an incriminating response. C.f., Maughan v. State,473 So.2d 1140 (Ala.Cr.App. 1985) (officer, while seizing marijuana found on the appellant's premises, told the appellant, "Well, I found the marijuana," to which he responded that it was his). Thus, we find no custodial interrogation occurred.
Further, "Miranda does not prevent traditional investigatory functions such as general on-the-scene questioning." Bui v.State, 551 So.2d 1094, 1108 (Ala.Cr.App. 1988), aff'd,551 So.2d 1125 (Ala. 1989), vacated on other grounds, ___ U.S. ___,111 S.Ct. 1613, 113 L.Ed.2d 712 (1991). Here, the appellant's paranoia regarding her purse could have raised the suspicions of Deputy Gray, making his question about the purse more akin to an on-the-scene investigatory query. See, e.g., Bui, supra (officer's asking appellant about his children, whose corpses, along with the murder weapon, were on the bed next to him, was in the nature of general on-the-scene investigation and, thus, statement was admissible even though the appellant had not been read his Miranda rights). Cf., Pittman v. State, 541 So.2d 583
(Ala.Cr.App. *Page 186 
1989) (after smelling odor of marijuana, officer was justified in asking appellant, who had been lawfully arrested for speeding, whether he had been smoking marijuana, without first advising him of his Miranda rights).
Finally, even if Deputy Gray's questions were held to have taken place during a custodial interrogation, the receipt of the statement into evidence would be harmless error because the marijuana in the appellant's purse would have been discovered inevitably. Evidence discovered through illegal means should not be excluded when it is established "by a preponderance of the evidence that ultimately or inevitably the information would have been discovered by lawful means." Meadows v. State,584 So.2d 953 (Ala.Cr.App. 1991). The marijuana in the appellant's purse would have been discovered eventually as a result of a lawful search incident to her arrest and pursuant to a search of her purse for weapons, as discussed in Part II of this opinion.
The circuit court did not err when it denied the appellant's motion to suppress the statements.
 II
The appellant also contends that the circuit court erred in denying her motion to suppress the items seized from her purse (the tin of marijuana, the plastic bags of marijuana, the scales, the box of sandwich bags, and the cigarette rolling papers) and from the cooler in her car (the cans of beer and the bottle of vodka). She argues that this evidence was discovered pursuant to illegal warrantless searches. The appellant, however, does not contend that the bottles of beer that were in plain view on the passenger-side floorboard when Deputy Gray first approached her car were illegally seized.
Initially, no search occurred when the officers seized the tin of marijuana. The appellant voluntarily produced the container from her purse and handed it to the officers. Thus, no search and seizure occurred. See, e.g., Mack v. State,348 So.2d 524 (Ala.Cr.App. 1977).
The seizure of the other items in the purse should also be upheld. Police officers have the authority to search a subject's purse when the search is incident to a valid arrest.Glasco v. State, 513 So.2d 54 (Ala.Cr.App.), cert. denied,513 So.2d 61 (Ala. 1987). Cf., Clifton v. State, 501 So.2d 539
(Ala.Cr.App.), writ denied, 501 So.2d 541 (Ala. 1986) (search of arrestee's wallet). The search was further justified by the fact that the appellant's sudden movements gave the officers reason to believe that a weapon might be concealed within the purse or the large white plastic bag in the purse. See, e.g.,Bragg v. State, 536 So.2d 965 (Ala.Cr.App. 1988).
Finally, the appellant argues that the search of the car and of the cooler was illegal, contending that the officers failed to procure a warrant and that none of the exceptions to the warrant requirement of the Fourth Amendment apply.
First, the appellant contends that the search of her car was not a valid inventory search, arguing that the state, at trial, failed to prove the necessary elements regarding the procedure followed. We agree.
In Ex parte Boyd, 542 So.2d 1276 (Ala.), cert. denied,493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989), the Alabama Supreme Court explained the requirements of a valid inventory search of an impounded automobile and any containers located therein, whether conducted at the scene of the arrest or after it has been towed, as established by South Dakota v. Opperman,428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), andColorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738,93 L.Ed.2d 739 (1987). In addition to proving the lawfulness of the arrest of the accused and the impoundment of the car, the state must establish that the inventory was accomplished through standard police procedures:
 "[T]he record must sufficiently reflect what that policy is, describe the policy in such a way that its reasonableness can be reviewed, and present adequate *Page 187 
evidence of what the employed criteria were."
542 So.2d at 1283 (emphasis original). See also Jenkins v.State, [Ms. 90-1044, February 28, 1992], 1992 WL 71035 (Ala.Cr.App. 1992); Riley v. State, 583 So.2d 1353
(Ala.Cr.App.), writ denied, 583 So.2d 1356 (Ala. 1991).
"[A] police officer's conclusory testimony that the inventory was done in compliance with departmental regulations" is, by itself, insufficient to bring the search within the inventory exception. Boyd, 542 So.2d at 1282. Further, the absence of an inventory list and the fact that inventories are not uniformly conducted throughout the police department involved lend support to an inventory's not qualifying as a lawful search.Boyd, supra.
The search of the appellant's car in this case would not qualify as a valid inventory search under the authority ofBoyd, Opperman, and Bertine, because there was not sufficient testimony regarding the sheriff's department policy on inventory searches and whether the search conducted here would be reasonable in accordance with that policy. The evidence in this case leads us to conclude that the police relied on grounds other than the inventory exception in conducting the warrantless search of the appellant's car.
The search of the appellant's car, however, was lawful under the search incident to arrest exception. After arresting the driver of an automobile, an officer "may, as a contemporaneous incident of that arrest, search the passenger compartment" of that car, including "the contents of any containers found within the passenger compartment." New York v. Belton,453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); Danielsv. State, 416 So.2d 760, 763 (Ala.Cr.App. 1982). See also, Statev. Calhoun, 502 So.2d 808 (Ala. 1986).
Further, the discovery of the alcohol in plain view on the floorboard and the small tin of marijuana that she took from her purse established probable cause to search the automobile. The automobile's mobility is an exigent circumstance, which when accompanied by probable cause will justify a warrantless search. Riley, supra; Head v. State, 577 So.2d 923
(Ala.Cr.App. 1990), writ denied, 577 So.2d 925 (Ala. 1991);Pittman v. State, 541 So.2d 583 (Ala.Cr.App. 1989).
After reviewing the facts above, we find no error in the denial of the appellant's motion to suppress the evidence.
The judgment in this case is affirmed.
AFFIRMED.
All the Judges concur.
[1] 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).