The State of Alabama appeals from the trial court's order granting, in part, Paige Tidwell Gargus's motion to suppress evidence seized as the result of a traffic stop.
On May 25, 2001, Gargus was indicted for unlawful possession of marijuana, a violation of § 13A-12-214, Ala. Code 1975, and unlawful possession of a controlled substance, methamphetamine, a violation of § 13A-12-212, Ala. Code 1975. Gargus filed three motions to suppress the marijuana and methamphetamine evidence. The trial court conducted a suppression hearing on Gargus's motions, during which the State offered into evidence, with Gargus's consent, a transcript of testimony taken at the preliminary hearing.
At the preliminary hearing, Benny Richardson, a corporal with the Oneonta Police Department, testified that, on the night of September 24, 2000, at approximately 11:30 p.m., he was on patrol when he observed a Pontiac Trans Am automobile traveling extremely slow on Jefferson Avenue. He began to follow the vehicle, and he noticed that the driver, whom he later identified as Gargus, was driving and braking erratically, that the vehicle was traveling 10-15 miles per hour in a 25-mile-per-hour zone, and that the vehicle frequently *Page 588 
crossed over the center of the road into the oncoming lane of traffic. Cpl. Richardson testified that Gargus made several turns and then stopped in the road. At that point, Cpl. Richardson activated his emergency lights, stopped his patrol vehicle, and approached the Trans Am on foot.
When he reached the vehicle, Cpl. Richardson said, he asked Gargus if she was lost or if she needed help. She replied that she had just come from a Wal-Mart discount store. During this initial dialogue with Gargus, Cpl. Richardson noticed that she was "clenching something in her left hand in her pocket" and, for his own safety, requested that she remove her hand from her pocket, which she did. (C. 44.) Cpl. Richardson then continued talking to Gargus and noticed that her speech was slurred; he also detected a strong odor of "burnt marijuana smoke" emanating from the vehicle. (C. 44.) Cpl. Richardson testified that he asked Gargus where she lived, to which she replied that she lived right down the street, and that he then asked for her driver's license, which she produced after having what Cpl. Richardson described as difficulty finding it in her purse despite the fact that, according to Cpl. Richardson, the license was in plain view when she first opened her purse.
At that point, Cpl. Richardson said, he became suspicious that Gargus was intoxicated, and he asked her to step out of her vehicle to perform field sobriety tests. According to Cpl. Richardson, when Gargus got out of the car, she stumbled and was unsteady on her feet, as if she were "light-headed." (C. 44.) When Cpl. Richardson began conducting the field sobriety tests, he noticed that Gargus put her hand on her left front pants pocket, the same pocket he had observed her hand in when he initially approached her car. Because he did not know what was in her pocket and because he was concerned for his own safety, he asked Gargus if she would mind emptying her pockets; she agreed to do so. Cpl. Richardson testified that as Gargus emptied her left front pants pocket a plastic baggie became partially visible. According to Cpl. Richardson, it was "immediately apparent" that the baggie "could" contain contraband. (C. 45.) When the baggie became visible, Cpl. Richardson said, Gargus pushed it back into the pocket. Cpl. Richardson then told Gargus to remove the baggie from her pocket. Cpl. Richardson testified that as Gargus removed the baggie and handed it to him, she said, "All I have is a small amount of marijuana and a pipe." (C. 46.) The substance in the bag was later determined to be marijuana and it was determined that the pipe contained marijuana residue. At that point, Cpl. Richardson arrested Gargus, handcuffed her, and placed her in the backseat of his patrol vehicle.
After securing Gargus, Cpl. Richardson called a wrecker to tow the Trans Am and conducted what he called an inventory search of the vehicle, which, he said, was a policy of the police department whenever the sole occupant of a vehicle is taken into custody. During the search, Cpl. Richardson discovered a red plastic bowl in the console containing what appeared to be, and what was later determined to be, methamphetamine.
At the suppression hearing, Gargus proffered to the court that, if she were to testify, she would dispute two portions of Cpl. Richardson's testimony at the preliminary hearing. First, according to Gargus, when Cpl. Richardson activated his emergency lights and executed a traffic stop of her vehicle, she was not stopped in the road, as Cpl. Richardson testified, but was traveling at approximately 5-10 miles per hour. In addition, Gargus said, when Cpl. Richardson initially approached her, she, *Page 589 
not Cpl. Richardson, spoke first; she said that she immediately asked why she was being stopped and that Cpl. Richardson then asked her whether she was lost. The trial court accepted this proffer as evidence at the suppression hearing.
Gargus argued to the trial court that both the marijuana and methamphetamine evidence should be suppressed because, she said (1) Cpl. Richardson had no reasonable suspicion or probable cause for the initial stop of her vehicle; (2) there was no probable cause to order her to empty her pockets after she got out of the vehicle; and (3) the State failed to prove that the "inventory" search of her vehicle after she was arrested was conducted in accordance with the policies and procedures of the Oneonta Police Department. The State argued that there was reasonable suspicion to stop Gargus's vehicle, that Gargus voluntarily emptied her pockets for Cpl. Richardson and admitted to possessing marijuana, and that the State did not have the burden of showing the rules and regulations for conducting an inventory search.
After a short recess, the trial court denied Gargus's motion to suppress the marijuana evidence, specifically finding that Cpl. Richardson had reasonable suspicion to initiate a stop of Gargus's vehicle, and that Gargus had voluntarily produced the marijuana from her pocket. However, the court granted Gargus's motion to suppress the methamphetamine evidence discovered in the car. The court made the following findings of fact regarding the search of Gargus's vehicle:
 "The defendant was taken into custody for possession of marijuana. A wrecker was called. The vehicle was duly towed. At that time, the officer conducted an inventory search of the vehicle. The court has been furnished an inventory of the vehicle. The court has not been furnished with any evidence of what the policies and procedures are of the City of Oneonta for conducting an inventory search. The court finds that if at all in the record of the [preliminary] hearing there was merely a cursory conclusory statement by the officer that the policies and procedures of the Department were followed. . . . [T]he State has failed to produce at this hearing sufficient evidence to substantiate the inventory search of the vehicle. . . ."
(R. 33-34.) Although the wording of the trial court's findings suggests that Gargus's vehicle was towed before the search was conducted, at a later point in the hearing, the trial court indicated that the search was conducted while Cpl. Richardson was waiting for the wrecker to arrive, and the undisputed evidence at the hearing showed that the search was conducted before the wrecker arrived at the scene.[1] Therefore, it is clear to us that the trial court determined that the search was conducted before the wrecker arrived at the scene.
After the trial court issued its ruling, the State moved for a reconsideration of the ruling and offered a copy of the Oneonta Police Department's policies and procedures with regard to inventory searches. The State also argued, for the first time, that even if the search was not a valid inventory search, it was a valid search incident to a lawful arrest. The trial court denied the State's motion to reconsider. It allowed the State to introduce the policy-and-procedure manual into evidence for identification purposes only, but refused to consider the manual on the ground that the State had had the opportunity to introduce the manual during the suppression *Page 590 
hearing and before the court issued its ruling, but chose not to do so. In addition, the court rejected the State's argument that the search was incident to a lawful arrest on the ground that Gargus had already been handcuffed and placed in the backseat of Cpl. Richardson's patrol car at the time the search was conducted.
On appeal, the State argues, among other things, that the trial court erred in suppressing the methamphetamine evidence because, it says, the search of Gargus's vehicle was a valid search incident to a lawful arrest. Although the State does not concede that the search was not a valid inventory search, it argues that this Court need not reach that issue because the search was proper as a search incident to a lawful arrest.[2] We agree.
Initially, we note that the standard of review in this case is de novo. It is well settled that "[i]n reviewing a decision of a trial court on a motion to suppress evidence, in a case in which the facts are not in dispute, we apply a de novo standard of review." State v. Otwell,733 So.2d 950, 952 (Ala.Crim.App. 1999). See also State v. Hill,690 So.2d 1201 (Ala. 1996); Tuohy v. State, 776 So.2d 896 (Ala.Crim.App. 1999); and Barnes v. State, 704 So.2d 487 (Ala.Crim.App. 1997). Although two portions of Cpl. Richardson's testimony — whether he activated his emergency lights and executed the traffic stop before or after Gargus stopped her vehicle and whether, when Cpl. Richardson first approached Gargus's vehicle, he spoke first or she spoke first — were disputed by Gargus, those two disputed portions of testimony do not pertain to the search of Gargus's vehicle. The facts surrounding the search of the vehicle — which is the only issue before this Court — are undisputed. Therefore, the proper standard of review in this case is de novo.
In Baird v. State, 849 So.2d 223 (Ala.Crim.App. 2002), this Court stated:
 "`"`This court has long held that warrantless searches are per se unreasonable, unless they fall within one of the recognized exceptions to the warrant requirement. See, e.g., Chevere v. State, 607 So.2d 361, 368 (Ala.Cr.App. 1992). These exceptions are: (1) plain view; (2) consent; (3) incident to a lawful arrest; (4) hot pursuit or emergency; (5) probable cause coupled with exigent circumstances; (6) stop and frisk situations; and (7) inventory searches. Ex parte Hilley, 484 So.2d 485, 488 (Ala. 1985); Chevere, supra, 607 So.2d at 368.'"
 "`State v. Mitchell, 722 So.2d 814 [,820] (Ala.Cr.App. 1998), quoting Rokitski v. State, 715 So.2d 859 [,861] (Ala.Cr.App. 1997).'
 "[State v. Otwell,] 733 So.2d [950,] 952[(Ala.Crim.App. 1999)].
 "`"When officers lawfully arrest an automobile occupant, they may search the passenger compartment of the automobile as a contemporaneous incident of the arrest, and they also may examine the contents of containers found in the automobile."' State v. Otwell, 733 So.2d at 954, quoting United States v. Diaz-Lizaraza, 981 F.2d 1216, 1222 (11th Cir. *Page 591 
1993). `This is so even though the appellant was already handcuffed and placed in the police officer's car when the appellant's car was searched.' Mason v. State, 768 So.2d 981, 999 (Ala.Crim.App. 1998), aff'd, 768 So.2d 1008 (Ala. 2000), citing Gundrum v. State, 563 So.2d 27 (Ala.Crim.App. 1990)."
849 So.2d at 229-30. In Sheffield v. State, 606 So.2d 183 (Ala.Crim.App. 1992), this Court stated:
 "After arresting the driver of an automobile, an officer `may, as a contemporaneous incident of that arrest, search the passenger compartment' of that car, including `the contents of any containers found within the passenger compartment.' New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); Daniels v. State, 416 So.2d 760, 763 (Ala.Cr.App. 1982). See also, State v. Calhoun, 502 So.2d 808 (Ala. 1986)."
606 So.2d at 187. Additionally, in Mason v. State, 768 So.2d 981
(Ala.Crim.App. 1998), aff'd, 768 So.2d 1008 (Ala. 2000), this Court stated:
 "Even if we were to conclude that the search was not authorized pursuant to an inventory search, the trial court's denial of the motion to suppress is due to be affirmed because the search of the appellant's vehicle was lawful as a search incident to an arrest. Sheffield, 606 So.2d at 187. This is so even though the appellant was already handcuffed and placed in the police officer's car when the appellant's car was searched. Gundrum v. State, 563 So.2d 27
(Ala.Crim.App. 1990)."
768 So.2d at 999.
Moreover, in Adams v. State, 815 So.2d 578 (Ala. 2001), the Alabama Supreme Court stated:
 "A police officer's detecting the smell of raw or burned marijuana coming from a particular place or person is sufficient to provide probable cause to search that place or person. See Blake v. State, 772 So.2d 1200 (Ala.Crim.App. 2000) (holding that the odor of burning marijuana emanating from the defendant's automobile constituted probable cause to search the defendant and his passenger and to arrest either for possession of marijuana); State v. Betterton, 527 So.2d 743, 745-46 (Ala.Crim.App. 1986); State v. Mathews, 597 So.2d 235, 237
(Ala.Crim.App. 1992). In Mathews, the Court of Criminal Appeals stated:
 "`"It appears to be generally accepted that the smell of marijuana in its raw form or when burning is sufficiently distinctive to come within the rule of . . . Johnson [v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 . . . (1948), that probable cause to believe that an illegal substance is present may be established by smell]. Consequently, the courts have found probable cause to search when the distinctive odor of marijuana is found emanating from a particular place and have likewise found probable cause to arrest when the odor was detected coming from a particular person."
 "`"The odor of fresh marijuana or marijuana smoke, standing alone, has . . . been held or recognized as providing probable cause to conduct warrantless searches of . . . persons and their clothing."'
 "597 So.2d at 237 (alterations in original; citations omitted).
 "In Blake, the Court of Criminal Appeals addressed an issue of first impression, namely, `whether the odor of burned marijuana emanating from an automobile may be enough to provide probable cause to arrest the occupants of the vehicle.' 772 So.2d at 1205. The *Page 592 
Court of Criminal Appeals answered the question in the affirmative:
 "`The odor of burning marijuana emanating from [the defendant's] car alerted the officers to the fact that marijuana was likely present or that it had been burned only shortly before and, also, that the car's two occupants — particularly [the defendant], the driver in "control" of the car — likely possessed marijuana. This provided probable cause to arrest [the defendant] for possession of marijuana. Under the facts of this case, where two persons were sitting in the front seat of an automobile, we do not believe that an individualized suspicion was required to arrest either [the defendant] or his passenger. To require such individual suspicion in all cases would be to say that even where the odor of burning marijuana is emanating from the relatively close confines of an automobile — therefore clearly justifying a search of the automobile — if the occupants of the vehicle have the foresight to quickly secrete the controlled substance in their pockets, they may drive away after the search of the vehicle proves fruitless. See Brunson [v. State], 327 Ark. [567,] 572, 940 S.W.2d [440,] 442 [(1997), cert. denied, 522 U.S. 898, 118 S.Ct. 244, 139 L.Ed.2d 173
(1997)]; [see] also 3 W. LaFave, Search and Seizure, § 7.2(e) at 508 (3d ed. 1996).'"
815 So.2d at 581-82 (footnote omitted).
Based on our review of the record, it is clear that the search of Gargus's vehicle was valid as a search incident to a lawful arrest. When Gargus was initially stopped, Cpl. Richardson smelled the odor of "burnt marijuana smoke" emanating from Gargus's vehicle. This, by itself, established probable cause and, also considering the inherent mobility of automobiles, see Seagroves v. State, 726 So.2d 738, 743 (Ala.Crim.App. 1998); Sheffield, 606 So.2d at 187, justified a warrantless search of the vehicle. In addition, once Gargus was arrested for possession of marijuana, which the trial court found was a lawful arrest, Cpl. Richardson could properly search the vehicle incident to that lawful arrest, despite the fact that Gargus was handcuffed and secured in the backseat of his patrol car. Therefore, the trial court erred in suppressing the methamphetamine evidence.[3]
Based on the foregoing, the judgment of the trial court is reversed and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMillan, P.J., and Cobb, Baschab, and Wise, JJ., concur.
[1] In fact, the record reflects that the vehicle was never actually towed or impounded, but instead, was released to Gargus's husband at the scene.
[2] Gargus argues, on the other hand, that this Court should not consider whether the search was valid as a search incident to a lawful arrest because, she says, "[t]here is no testimony in the record from the arresting officer that he at any time considered this search a search incident to a lawful arrest." (Gargus's appellate brief at p. 15.) However, it is well settled that "'[a]s long as the police officer is doing only what is objectively authorized and legally permitted, the officers subjective intent in doing it is irrelevant.'" Woods v. State,695 So.2d 636, 640 (Ala.Crim.App. 1996), quoting Hutcherson v. State,677 So.2d 1174, 1184 (Ala.Crim.App. 1994), rev'd on other grounds,677 So.2d 1205 (Ala. 1996).
[3] We note that Gargus argues that this Court should not uphold the search as valid incident to a lawful arrest because, she says, the search exceeded the scope of a search incident to a lawful arrest because Cpl. Richardson searched the trunk of the vehicle, not merely the passenger compartment. However, as the State correctly points out in its reply brief, the methamphetamine evidence was found in the console in the passenger compartment, not in the trunk.