JOINER, Judge,
concurring specially..
I write specially to provide additional reasons for affirming the circuit court’s denial of Travis Storey’s claim that the circuit court “erred to the degree of reversible error when it conducted an arraignment in [his] case without [him] being represented by councel [sic].” (Storey’s brief, p. 21.) ,
The relevant procedural history in this matter is as follows: In August 2003, the Calhoun County Grand Jury indicted Sto-rey on two counts of attempted murder, see §§ 13A-4-2 and 13A-6-2, Ala.Code *1126 1975. On January 7, 2004, Storey appeared before the circuit court for an “initial appearance” at which Storey informed the circuit court that “he [was] talking [with] Merrill Vardaman re[garding] representation of counsel.” (Record on Return to Remand, C. 51.) Thereafter, on January 9, 2004, the circuit court issued an order setting arraignment for January 27, 2004'. (Record on Return to Remand, C. 51.) On January 27, 2004, Storey appeared before the circuit court and the following occurred:
“THE COURT: We’ll come to order. Matters before the Court set for this morning are cases CC 2004-003 and 004, each styled State of Alabama versus Travis Storey, S-T-O-R-E-Y. You are Travis Storey?
“[Storey]: (Nodding head up and down.)
“THE COURT: Yes or no?
“[Storey]: (Pointing to Attorney Jack Draper.)
“MR. DRAPER: Pm not representing you.
“THE COURT: He doesn’t represent ■you at this point. You are Travis Sto-rey; is that correct?
“[Storey]: Who is representing me?
“THE COURT: Right now you represent yourself.
“[Storey]: I thought you were going to appoint him.
“THE COURT: Well, I might at a point, if it gets to the point you ask me to and I find you to be indigent. But that hasn’t happened yet.
“[Storey]: Shouldn’t I be with my attorney if Pm here?
“THE COURT: Once you have an attorney.
“[Storey]: So I’m just going through this and I ain’t got an attorney. I don’t understand it. What’s your name?
“THE COURT: It’s going to be a starting point, Mr. Storey. And we start by ascertaining that I have your name correct. Travis Storey is your correct name?
“[Storey]: (Nodding head up and down.)
“THE COURT: Yes or no?
“[Storey]: (Nodding head up and down.)
“THE COURT: You need to speak out so she can take that down (referring to Court Reporter).
“MR. DRAPER: You need to answer out.
“[Storey]: (Nodding head up and down.)
“THE COURT: That’s not an answer.
“MR. DRAPER: Verbally, you need to answer ‘yes’ or ‘no.’
“[Storey]: Are you going to represent me?
“MR. DRAPER: If the judge appoints me to represent you, yes, sir.
“[Storey]: You gave me your card (indicating to business card). What’s your name?
“MR. DRAPER: Jack Draper.
“[Storey]: Jack Draper.
“THE COURT: Is Travis Storey your correct name?
“[Storey]: (Nodding head up and down.)
“THE COURT: You need to answer out loud, ‘yes’ or ‘no.’
“[Storey]: I got to have a lawyer first. I mean, you ain’t appointed me a lawyer. Ain’t this arraignment?
“THE COURT: I’ve got to know who you are first, but you don’t want to answer that.
“[Storey]: I don’t understand.
*1127 “THE COURT: You don’t understand? You don’t understand whether you are Travis Storey or not?
“[Storey]: (Nodding head up and down.)
“THE COURT: You’re nodding ‘yes.’ Do you understand that?
“[Storey]: (Nodding head up and down.)
“THE COURT: Is Travis Storey your correct name?
“[Storey]: (Nodding head up and down.)
“THE COURT: I show you’re nodding ‘yes,’ and I’ll put that down as a ‘yes.’
[[Image here]]
“Mr. Storey, do you have an attorney at this point who represents you? Have you hired an attorney?
“[Storey]: You hired me one — you hired me one before I got here.
“THE COURT: No, not yet.
“[Storey]: Oh, you didn’t appoint Mr. Draper?
“THE COURT: If you’re indigent I said that I would.
“[Storey]: Sir?
“THE COURT: I’ve got to find that you’re indigent first.
“[Storey]: Which means?
“THE COURT: Which means you don’t have the money to hire an attorney.
[[Image here]]
“Have you hired an attorney to represent you?
“[Storey]: (No response.)
“THE COURT: Up to now have you?
“[Storey]: (Shakes head from side to side.)
“THE COURT: You’re shaking ‘no.’
“[Storey]: You my attorney?
“MR. DRAPER: Right now you have not hired me.
“[Storey]: You want your card?
“MR. DRAPER: No, sir, you have not hired me. The judge is going to get to that point in a second. Just right now you have not hired an attorney.
[[Image here]]
“[Storey]: So I’m going to trial right here.
“THE COURT: Unless you plead guilty down the road you will.
“[Storey]: Can I ask you something?
“MR. DRAPER: I’ll ask you — this is all being taken down on the record right now. Don’t say anything about the facts of the case.
“[Storey]: I understand that.
“MR. DRAPER: Okay.
“[Storey]: But I’m having arraignment; right? I just got locked up. And I ain’t even been to no preliminary hearing. I mean, how is that possible, you know? How can I — I’ve been thrown in without being legally first — do you understand? By procedure I should go to the preliminary hearing. And here it is today, I’m like going through arraignment and all this and I haven’t had none of this.
“THE COURT: Well, Mr. Storey—
“[Storey]: — I don’t understand. I mean—
“THE COURT: You and I went through this at your initial appearance hearing on January the 7th. And I explained to you—
“[Storey]: — When?
“THE COURT: — you had been indicted by the Grand Jury. And once you were indicted you do not have a right to a preliminary hearing after that.
“[Storey]: But — this is a case of being attempted murder you say?
*1128 “THE COURT: Two cases of attempted murder.
“[Storey]: Okay.
“MR. DRAPER: Again, Mr. Storey, don’t say anything about—
“[Storey]: — Are you representing me?
“MR. DRAPER: I’m just—
“[Storey]: — I’m just asking a question. Yea or nay?
“THE COURT: He hasn’t been appointed. You won’t let us get to that point.
[[Image here]]
“Mr. Storey, have you hired an attorney to represent you in these cases?
“[Storey]: (Shaking head from side to side.)
“THE COURT: That’s a ‘no.’
“Are you going to hire an attorney to represent you?
“[Storey]: Yeah. I need one?
“THE COURT: That’s up to you to decide, its not for me to decide. If you have the financial resources to hire an attorney, you can do so. If you don’t have the money and the Court finds you to be what’s called indigent, don’t have the ability to hire an attorney, then the court will appoint an attorney to represent you.
[[Image here]]
“I’m trying to get to the point of having you arraigned and determining first if you have an attorney. And if not, are you indigent and do you want the Court to appoint an attorney. And if you’re indigent I’ll appoint an attorney. And then we’ll proceed with arraignment and have you enter your pleas.
“Now, you’ve told me that you haven’t hired an attorney. Are you—
“[Storey]: — Are you—
“THE COURT: — Are you financially able to hire an attorney?
“[Storey]: Will all this be dismissed upon me?
“THE COURT: No. It may be dismissed, but it may go to trial.
“[Storey]: How did I get into all this?
“THE COURT: You were indicted by the Calhoun County Grand Jury.
“[Storey]: And they indicted me on what counts? What accounts (sic) did they have to indict me?
“THE COURT: You know, sir. They indicted you for two cases of attempted murder of Rodney Dean Phillips and of Maurice Kirby.
“[Storey]: So they indicted me on— outside of the case. I mean — outside of the system or — I mean, who is the victims?
[[Image here]]
“THE COURT: And I’m asking you, do you have the resources to hire an attorney? Have you got money in the bank? Do you own land? Have you got other property you can turn into cash to hire an attorney? It’s a ‘yes’ or ‘no’ question.
“[Storey]: (No response.)
“THE COURT: Are you going to answer my question?
“[Storey]: How did I get here?
“THE COURT: I’ve told you three times. You were indicted. Evidence went before the Grand Jury, the Grand Jury indicted you.
“[Storey]: Since — when it goes in front of that, shouldn’t it be a lawyer there and the DA there? And should I be present, you know, with this, Mr. Street? No disrespect. I just need to understand about it. I mean — because—
“THE COURT: — I have told you.
“[Storey]: — because I’m going through these procedures.
*1129 “THE COURT: I’m going to send him back to the jail. He doesn’t want to answer the questions.”
(Record on Direct Appeal, Rl. 4-14.)[1] On February 25, 2004, Storey again appeared before the circuit court and the following occurred:
“THE COURT: Court will come to order. Matters before the Court at this time arise out of criminal cases CC 04-OS and 04, each styled State of Alabama versus Travis Storey. Mr. Storey is present.
“Mr. Storey, are you going to speak with me today?
“[Storey]: (Nodding head up and down.)
“THE COURT: Just for the record, Mr. Travis Storey is present and has been before this Court. He was here in each of these cases on January the 7th for an initial appearance hearing. At that time Mr. Storey communicated with the Court and said he was talking to Mr. Merrill Vardaman about possible representation as his attorney. Mr. Storey—
“(The Defendant handed a document to the deputy. The deputy handed the document to the Court.)
“THE COURT: — was brought back before this Court on January 27th, 2004, and the Court spoke with him, asking questions concerning whether he was indigent or not. And Mr. Storey elected or refused to answer the Court’s questions. The Court then returned him to jail.
“Mr. Storey is here this afternoon for the Court to enter his plea. The Court has provided him copies of the indictment. He indicated he received those after he was arrested. I’ll read those indictments at this time.
“ ‘CC 04-03, State of Alabama, Calhoun County. In the Circuit Court of Calhoun County, August Session 2003. The Grand Jury of Calhoun County charge that before the finding of this indictment Travis Storey, whose true name to the Grand Jury is otherwise unknown, did on or about March 28th, 2003, with the intent to commit the crime of murder, Section 13A-6-2 of the Alabama Criminal Code, attempt to intentionally cause the death of another person, to-wit: Maurice Kirby, by shooting him several times with a firearm, in violation of Section 13A-4-2 of the Alabama Criminal Code, against the peace and dignity of the State of Alabama.’
“That indictment charges you, Mr. Storey, with the offense of attempted murder.
“I ask the question: Do you understand that charge?
“[Storey]: (Shaking head from side to side.)
“THE COURT: How do you plead to that charge?
“[Storey]: Who is this person? What type person — who is the person?
“THE COURT: Who is what person?
“[Storey]: Who is this person? The words that you quoted.
“THE COURT: The quote is from the indictment. That’s the charge.
“[Storey]: The whole quotement (sic), everything that you said, who is the person?
“THE COURT: The defendant is you, Travis Storey.
“[Storey]: (Shaking head from side to side.)
*1130 “THE COURT: Are you asking who is Maurice Kirby?
“[Storey]: Who is the person?
“THE COURT: Other than those two, those are the only two that are listed.
“[Storey]: You said one.
“THE COURT: Are you saying who is the Grand Jury?
“[Storey]: Who is that person?
“THE COURT: What person?
“[Storey]: What person you talking about?
“THE COURT: I’m not talking about any particular person, I’ve just read the indictment to you, the charge that’s been made against you by the Calhoun County Grand Jury.
“[Storey]: Who name you called?
“THE COURT: You, Travis Storey.
“[Storey]: Who name you call?
“THE COURT: What is my name? I’m Judge Street.
“[Storey]: For that person.
“THE COURT: For what person?
“[Storey]: This here says, this says nor should any person be subject for the same offense to be twice in jeopardy of life or limb nor shall be compelled to be a witness against himself.
“It then states right here, it says — it says right here, that you — did you receive your copy up there?
“THE COURT: I have been handed a copy of page 769 of some book.
“[Storey]: Is you familiar with that copy, sir?
“THE COURT: What is listed as appendix one, which are here the first eight amendments to the United States constitution.
“[Storey]: Yes, sir.
“THE COURT: I’m familiar with it.
“[Storey]: So why am I here? For what reasons?
“THE COURT: You have been indicted, charged with attempted murder in two cases.
“[Storey]: To who?
“THE COURT: You’ve been charged with attempted murder of Maurice Kirby. And of Rodney Dean Phillips then in case 04-04.
“[Storey]: Who is these persons?
“THE COURT: I only know their names, sir.
“[Storey]: I heard you.
“THE COURT: All right. My question again is, having heard the Court read the indictment charging you in this first case with attempted murder, how do you plead to that charge?
“[Storey]: I don’t understand who are these people. I don’t know why I’m here.
“THE COURT: All right. The Court then enters for you and on your behalf a plea of not guilty.[2]
“[Storey]: So you deprive me of my life.
“THE COURT: Sir?
“[Storey]: You heard me.
“THE COURT: No, sir, I didn’t. I heard you say something. You’re asking something is all I heard.
“[Storey]: So you just going to incriminate me on these charges?
“THE COURT: I’m not incriminating you at all. I’m entering a plea of not guilty.
*1131 “[Storey]: Which is placing me to be what?
“THE COURT: Which is simply for you asserting all of your legal rights.
“[Storey]: It’s placing me to be what? When you, sir, Judge Street, place that in there, what did you do? You placed what on me?
“THE COURT: You have not answered to the indictments so under the law I’m entering a plea of not guilty.
“[Storey]: Okay. Listen to this. Have we been here before with this?
“THE COURT: Yes, sir, twice.
“[Storey]: Twice? Okay.
“THE COURT: Now, in case—
“[Storey]: So — so the first time we was here you didn’t—
“THE COURT: — The first time we were here for an initial appearance.
“[Storey]: You didn’t accept that.
“THE COURT: Yeah, for that hearing that we had. We had an initial appearance.
“[Storey]: So why is we doing this twice?
“THE COURT: We’re here a second time for arraignment, for a plea to be entered and—
“[Storey]: — We didn’t do that the first time?
“THE COURT: No, sir, we didn’t.
“[Storey]: How many times I been in front of you?
“THE COURT: I’m not here to answer your questions particularly. We’re here to go forward with your arraignment.
“[Storey]: How many times have I been before you?
“THE COURT: How many — I ask you, how many times have you been before me?
“[Storey]: (Shrugging shoulders.)
“THE COURT: I have a number, I know a number.
“[Storey]: Sir?
“THE COURT: I know the number of times you’ve been before me.
“[Storey]: So you wish not to answer the question?
“THE COURT: I don’t have to.
“In case CC 04-04, the indictment reads: ‘State of Alabama, Calhoun County. In the Circuit Court of Calhoun County, August Session 2003. The Grand Jury of Calhoun County charge that before the finding of this indictment Travis Storey, whose true name to the Grand Jury is otherwise unknown, did on or about March 27, 2003, with the intent to commit the crime of murder, Section 13A-6-2 of the Alabama Criminal Code — ’
“[Storey]: — Excuse me.
“THE COURT: ‘Attempt to intentionally cause the death of another person, to-wit: Rodney Dean Phillips — ’
“[Storey]: — Excuse me, sir.
“THE COURT: ‘By shooting him several times with a firearm, in violation of Section 13A-4-2 of the Code of Alabama, against the peace and dignity of the State of Alabama.’
“[Storey]: Excuse me, sir.
“THE COURT: That indictment charges you, Mr. Storey, with the offense of attempted murder. Do you understand that charge?
“[Storey]: Excuse me, sir. How did I get here?
“THE COURT: Do you understand that charge?
“[Storey]: How did I get here?
“THE COURT: You were indicted by the Grand Jury.
*1132 “[Storey]: How was I indicted before I even went to what /all call an initial appearance of the preliminary?
“THE COURT: A Grand Jury can take up a matter, can investigate it—
“[Storey]: — but who has—
“THE COURT: — and can issue out an indictment.
“[Storey]: Who has the right to bind it over?
“THE COURT: Sir?
“[Storey]: Who has the right to bind it over?
“THE COURT: It’s not a bind over. The Grand Jury—
“[Storey]: — Excuse me—
“THE COURT REPORTER: — Excuse me, but only one person speaking at a time.
“THE COURT: Let me finish my answer to you. And then they may return an indictment, which they did in each of these cases.
“[Storey]: Yes, sir, no disrespect to you. But who — how—who was the Grand Jury? Who was they selected from?
“THE COURT: From the citizens of this county.
[[Image here]]
“THE COURT: .... Okay. Now, I’ve read this second indictment to you. Let me ask how you plead.
“[Storey]: Is this the District Attorney (pointing)?
[[Image here]]
“THE COURT: Mr. Storey, I’m asking you how you plead to that charge of attempted murder.
“[Storey]: Sir, I don’t even know why I’m here.
“THE COURT: I show that Mr. Sto-rey has again refused to enter pleas.
“[Storey]: Not refused. Not refused, but don’t know why I’m here.
“THE COURT: The Court hereby enters a plea of not guilty on Mr. Sto-rey’s behalf.
“Will you answer questions for me concerning whether you have the legal ability to hire an attorney or not?
“[Storey]: Sir, I don’t even know why I’m here, sir.
“THE COURT: I made it as clear as I can.
“[Storey]: I heard what you said, but I don’t know why I’m here.
“THE COURT: Well, you choose not to understand it would appear to me. This is the second attempt that I have undergone to have pleas entered to the charges. And I’m prepared to appoint counsel to represent you.”
(Record on Direct Appeal, Rl. 17-29.) Thereafter, the circuit court appointed Jack Draper to represent Storey. (Record on Direct Appeal, Rl. 30.) On December 14, 2004, Jack Draper filed a motion to withdraw as trial counsel stating that “an irreconcilable conflict has developed between he and [Storey].” (Record on Direct Appeal, C. 16.) The circuit court granted Draper’s motion and appointed Shaun Quinlan to represent Storey.
On August 8, 2005, Storey appeared in the circuit court and the following occurred:
“MR. QUINLAN: Judge, I want to say that ... on Friday, August 5th, I went down to determine whether or not Mr. Storey wanted a trial in this case.
“THE COURT: We are talking about your case, Mr. Storey. If you—
“[Storey]: Mr. Quinlan is no longer on it.
“THE COURT: I’m sorry. He still is at this point.
*1133 “MR. QUINLAN: And I went down to speak with Mr. Storey to see if he wanted a trial.
“[Storey]: He wasn’t supposed to be my attorney.
“MR. QUINLAN: Mr. Storey indicated to me that — and I think I need to bring it to the Court’s attention that he wanted to conduct his own trial and have me assist him only. And I explained to him that he could not have that relationship with me at trial. And if he did not want my assistance — and that’s why I asked the Court to set this for a hearing today so that Mr. Storey could represent to the Court that he wanted to represent himself at trial without the benefit of court appointed counsel.
“[Storey]: It just ain’t right.
“MR. QUINLAN: And I would also add, Judge, that Mr. Storey has initially indicated that he wanted to go to trial last Friday again and that he said — I asked him what witnesses I needed to subpoena, because he indicated he had witnesses who were going to come. He wouldn’t tell me who they were nor what they were going to say. And if those people actually exist, it would compromise my ability to represent him. And I just wanted to let the Court know that he has not cooperated with me in trying to present the best defense possible for him in the event this case goes to trial.”
(Record on Direct Appeal, R2. 9 — 111)
On July 31, 2006, Storey’s trial began and immediately before voir dire, while Storey was present in court with his trial counsel, Shaun Quinlan, both indictments charging Storey with attempted murder were read in his presence, and the circuit court noted that a not-guilty plea had been entered on Storey’s behalf. (Record on Direct Appeal, R3. 37-39.) At some point during trial, Storey informed the circuit court that he wished to represent himself for the remainder of the trial. (Record on Direct Appeal, R3. 304-05.) After, the circuit court questioned Storey about his desire to represent himself, the following occurred:
“THE COURT: Based upon the Court’s considering the answers of the defendant, Mr. Storey, he has asked to represent himself. He waives the right to counsel. I find that he’s doing so knowingly, intelligently, and voluntarily.
“[Storey]: Uh-huh (indicating yes).
“THE COURT: I have fully advised him of his right under Rule 6 to withdraw that waiver of the right of counsel at any time if he so chooses.”
(Record on Direct Appeal, R3. 321.) Sto-rey then represented himself throughout the remainder of the trial and the sentencing hearing.
Storey now alleges, among other things, in his Rule 32, Ala. R.Crim. P., petition for postconviction relief that the circuit court “erred to the degree of reversible error when it conducted an arraignment in [his] case without [him] being represented by councel [sic].” (Storey’s brief, p. 21.)
In Hamilton v. Alabama, 368 U.S. 52 (1961) — a capital case — the United States Supreme Court explained that “[arraignment under Alabama law is a critical stage in a criminal proceeding” because certain defenses may be “irretrievably lost, if not then and there asserted.” 368 U.S. at 53-54. Specifically, the Supreme Court found that the following defenses were “irretrievably lost” if not raised at arraignment:
“[T]he defense of insanity must be pleaded (15 Ala.Code § 423), or the opportunity is lost. Morrell v. State, 136 Ala. 44, 34 So. 208 [ (1902) ]. Thereafter that plea may not be made except in the discretion of the trial judge, and his refusal to accept it is ‘not revisable’ on appeal. Rohn v. State, 186 Ala. 5, 8, 65 So. 42, 43 [ (1914) ]. Cf. Garrett v. State, *1134 248 Ala. 612, 614-615, 29 So.2d 8, 9 [ (1947) ]. Pleas in abatement must also be made at the time of arraignment. 15 Ala.Code § 279. It is then that motions to quash based on systematic exclusion of one race from grand juries (Reeves v. State, 264 Ala. 476, 88 So.2d 561 [ (1956) ]), or on the ground that the grand jury was otherwise improperly drawn (Whitehead v. State, 206 Ala. 288, 90 So. 351 [(1921)]), must be made.”
Hamilton, 368 U.S. at 53-54.[3] The Supreme Court then held that, in capital cases, a defendant is entitled to the assistance of counsel at arraignment and the failure to have the assistance of counsel at arraignment requires reversal. Additionally, the Supreme Court explained “[w]hen one pleads to a capital charge without benefit of counsel, we do not stop to determine whether prejudice resulted.” Hamilton, 368 U.S. at 55.
This Court, historically, has interpreted Hamilton to apply to both capital and noncapital cases. See, e.g., Vanpelt v. State, 74 So.3d 32 (Ala.Crim.App.2009) (recognizing that arraignment is a critical stage that requires the assistance of counsel); Drummond v. State, 353 So.2d 546 (Ala.Crim.App.1977) (reversing a robbery conviction because Drummond was not represented by counsel at arraignment); Mayola v. State, 337 So.2d 105 (Ala.Crim.App.1976) (reversing a kidnapping conviction because Mayóla was not represented by counsel at arraignment); and Tucker v. State, 157 So.2d 229 (Ala.App.1963) (reversing a grand-larceny conviction because Tucker was not represented by counsel at arraignment).
The Alabama Supreme Court, however, in Weakley v. State, 721 So.2d 235 (Ala.1998), limited the reach of Hamilton as it applies to noncapital cases. In Weakley, the Alabama Supreme Court explained that “[t]he purpose of an arraignment is to formally charge a defendant with an offense and to allow a plea” and summarized the facts as follows:
“[T]he record is not clear as to whether Weakley appeared for her initial arraignment on March 14, 1996, without an attorney. However, the court’s case action summary sheet contains this entry: ‘The defendant appeared in court and pled not guilty. Will hire an attorney. Trial set April 15, 1996, at 8:30 a.m., with pretrial April 10, 1996, at 8:30 a.m.’ (Emphasis added.) On April 9, 1996, a lawyer, G. Jean Darby, was appointed to represent Weakley. On June *1135 7, 1996, Weakley appeared at a rear-raignment, with the benefit of counsel. At that time, the purpose of arraignment was met. Weakley was advised of the offense of which she was charged and was shown a copy of her plea agreement and the ‘explanation of rights and plea of guilty form’ that she had previously signed. During an extensive colloquy with the court, Weakley stated that she had voluntarily and knowingly entered into these agreements, and she acknowledged her signature on them. The court also advised Weakley of her unqualified constitutional right to a trial by jury. The court orally asked Weak-ley how she pleaded to the charged offense, and she responded, ‘Guilty.’ After entering a plea of guilty, Weakley was adjudged to be guilty. Weakley’s attorney was also present at her sentencing hearing.”
721 So.2d at 237. The Court, after “review[ing] the circumstances” of the case, held that, in this noncapital case, a “rear-raignment” cured the error of lack of counsel at Weakley’s initial arraignment. 721 So.2d at 237. The Court further held:
“It would be burdensome and redundant to require a reversal of the conviction in this case and have yet another arraignment. Weakley’s rearraignment was sufficient, and no prejudice resulted from the error at the first arraignment.”
Weakley, 721 So.2d at 237. Thus, Weakley holds that, in a noncapital case, this Court should determine whether the defendant had the assistance of counsel at an initial arraignment, and, if not, determine whether a “rearraignment” occurred.
Here, the memorandum affirming the circuit court’s denial of Storey’s arraignment claim concludes:
“The record on direct appeal establishes that on July 31, 2006, immediately before voir dire, Storey appeared in court with his trial counsel, Shaun Quin-lan, both indictments charging Storey with attempted murder were read in his presence, and the circuit court noted that a not guilty plea had been entered on Storey’s behalf. (Record on Direct Appeal, R. 37-39.)
“Additionally, Storey neither contended in the circuit court that he suffered prejudice from the error at the first arraignment, nor does he contend on appeal that he suffered prejudice.
“Because Storey was ‘rearraigned’ and suffered no prejudice from the error at his first arraignment, he is not entitled to relief on this claim and, therefore, the circuit court did not err when it denied this claim.”
(Footnotes omitted.) The memorandum notes that
“Although Storey did not enter a plea at this time, he neither took exception to the circuit court entering a plea on his behalf, nor did he attempt to enter a new or different plea at the time the circuit court noted that a guilty plea had been entered on Storey’s behalf. Moreover, Storey still maintains his innocence for the charges of attempted murder. (C. 61.)”
Judge Welch, in his special writing concurring in part and dissenting in part, contends that this portion of this Court’s memorandum “confuse[s]” arraignment with Rule 19.1, Ala. R.Crim. P., because, he says, “arraignment is more than just a routine reading of the charges as was done at trial. Otherwise, compliance with Rule 19.1, Ala. R.Crim. P., would render an arraignment less a critical phase of criminal proceedings and more a hollow exercise.”
In Weakley, although the Supreme Court termed Weakley’s second hearing a *1136 “rearraignment,” Justice See, in his special concurrence, explained that the “rear-raignment” was actually a guilty-plea proceeding, at which Weakley entered a guilty plea. Weakley, 721 So.2d at 238 (See, J., concurring specially). In other words, Weakley was rearraigned at the same time the circuit court was conducting a Rule 14.4, Ala. R.Crim. P., guilty-plea colloquy. Thus, the position this Court takes in its memorandum by allowing the circuit court to “rearraign” Storey and, at the same time, comply with Rule 19.1, Ala. R.Crim. P., is consistent with the position taken by the Alabama Supreme Court when it allowed both arraignment and a guilty-plea colloquy pursuant to Rule 14.4, Ala. R.Crim. P., to occur at the same time.
Additionally, I agree with Justice See’s special concurrence in Weakley stating that “where the defendant is not afforded counsel at an arraignment for a noncapital crime, I would canvass the record to determine whether the defendant had suffered actual prejudice that would warrant a reversal of the conviction and a remand for rearraignment.” 721 So.2d at 238. Here, a thorough review of the record demonstrates that Storey suffered no prejudice from the failure to have counsel at his initial arraignment. Specifically, Storey neither contends that he would have entered any special pleas at arraignment had he had the assistance of counsel, nor does the record indicate that any special pleas would have been viable.
Moreover, as the procedural history above indicates, at each instance that Sto-rey appeared before the circuit court for arraignment Storey was recalcitrant and did all that he could to frustrate the circuit court’s efforts to arraign him. Specifically, the circuit court attempted to determine Storey’s indigency status to appoint him counsel before arraignment but Storey refused to answer the circuit court’s questions and constantly interrupted the circuit court. Additionally, although Storey contends that he was entitled to counsel at arraignment, Storey ultimately fired his counsel and represented himself at trial and at sentencing.
Here, as in Weakley, “[i]t would be burdensome and redundant to require a reversal of the conviction in this case and have yet another arraignment,” especially when, for all that appears, Storey would do nothing more than maintain his innocence and proceed to trial — presumably choosing to do so without the assistance of counsel.
Because Storey was, in effect, rear-raigned and he suffered no prejudice, I concur in the affirmance of the circuit court’s denial of Storey’s arraignment claim.

. The record in Storey’s direct appeal contains three separate reporter's transcripts of various hearings and proceedings, each numbered separately. Thus, the reporter’s transcripts referenced are denoted as "Rl,” "R2,” and "R3.”

. Rule 14.2(d), Ala. R.Crim. P., states that "[i]f a defendant, when arraigned, fails or refuses to plead, or if a guilty plea is not accepted, the court shall enter a plea of not guilty and set the case for trial.”

. I note that Alabama law has changed a great deal since Hamilton was announced in 1961, and I question whether the concerns raised by the United States Supreme Court in Hamilton are now warranted. Even though an "insanity” defense should be raised at the time of arraignment, it may also be raised later at the discretion of the trial court; additionally, whether the trial court properly exercised its discretion in disallowing the later plea is now reviewable on appeal under an abuse of discretion standard. See Carthon v. State, 419 So.2d 293, 299 (Ala.Crim.App.1982) ("We hold that under the facts shown in this record the trial court did not abuse its discretion in overruling appellant's motion to set aside the verdict of the jury and sentence of the court, and grant appellant a new trial so that he could present the defense of not guilty by reason of insanity.”); Meredith v. State, 370 So.2d 1075, 1076 (Ala.Crim.App.1979) ("Immediately before trial the appellant withdrew his plea of not guilty and filed a single plea of not guilty by reason of insanity. The changing of the plea was properly within the discretion of the trial court.”).
Likewise, "pleas in abatement, motions to quash, and all other pleas [have been] abolished.” Rule 15.1, Ala. R.Crim. P. Although the Alabama Rules of Criminal Procedure contemplate motions that must be made prior to, or at the time of arraignment, these motion, too, may be raised after arraignment at the discretion of the trial court and/or for good cause shown. Rule 15.3, Ala. R.Crim. P.